IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE DOE, | ) | Case No. 8:17-cv-265 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT, JURY DEMAND AND** |
| | ) | **DESIGNATION OF PLACE OF TRIAL** |
| BOARD OF TRUSTEES OF THE | ) | |
| NEBRASKA STATE COLLEGES, | ) | |
| a Political Subdivision of the State | ) | |
| of Nebraska, | ) | |
| | ) | |
| Defendant. | ) | |

Jane Doe, Plaintiff in the above-captioned matter, by and through her counsel of record, for

her cause of action against Defendant, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.

This case is brought to redress a hostile educational environment, pursuant to Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681(a), and 42 U.S.C. § 1983. It arises from the

response of Chadron State College (CSC) to a student-on-student sexual assault.

2.

Jane Doe is a former student of CSC. She graduated in December 2016. She was an

international student from an African nation, attending school on an F-1 student visa. At all

relevant times, she was living in Chadron, Dawes County, Nebraska; as of the time of this filing, she

resides in Colorado. "Jane Doe" has been substituted for her name in order to protect her privacy

as an individual who has been sexually assaulted.

3.

The Board of Trustees of the Nebraska State College is a political subdivision of the State of Nebraska. It is the governing body for the affairs at CSC and other post-secondary institutions of education which, pursuant to NEB. REV. STAT. §§ 85-301 *et seq.*, make up the Nebraska State College System. During all material times, CSC received federal funding for its academic programs and activities.

4.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. As the events in question occurred in Chadron, Dawes County, Nebraska, venue is proper in this Court.

FACTUAL BACKGROUND

5.

In the 2015-2016 school years, CSC received federal funding, as contemplated by Title IX, 20 U.S.C. § 1681 *et seq.*, for its activities. CSC implemented and executed policies and customs in regard to, and in response to, DOE's report that she had been sexually assaulted by another CSC student.

6.

CSC is responsible to provide security for its students. To that end, it maintains a campus security force. DOE actually worked as a CSC campus security officer for three years.

7.

CSC is responsible for ensuring that its employees are properly trained and supervised to perform their jobs. This includes performance of the job of Title IX compliance officer, as well as other administrative positions charged with execution of the requirements of Title IX.

8.

CSC is responsible for the acts and omissions of its employees, agents, student workers and tenants.

9.

CSC is also responsible for enforcing its policies and procedures regarding student discipline, to include policies and procedures prohibiting sexual assault.

10.

From August 2013 through December 2016, DOE was an international student enrolled full-time at CSC. DOE had survived trauma in her country of origin, which impelled her to travel to the United States for college. She majored in Legal Studies and Psychology, earned excellent grades and qualified for the Dean's List.

11.

As an international student, DOE could work only in on-campus employment. She obtained employment as a campus security officer. She worked 20 or more hours per week, picking up extra hours over scheduled school breaks, and was assigned to the Andrews Hall complex, which interconnects Andrews Hall, High Rise and Kent Hall.

12.

Before September 19, 2016, DOE sought and received counseling at the CSC Counseling Center for panic attacks precipitated by childhood trauma and relationship problems.

13.

In the early morning hours of September 19, 2016, DOE was working as a security officer at Andrews Hall. A student-athlete named Anthony Ige sexually assaulted her.

14.

Hours later, DOE reported the assault to her counselor, Robin Bila.  At Bila's encouragement, DOE underwent a rape kit examination at the Chadron Community Hospital and reported the rape to law enforcement.  The rape was also reported to the CSC Student Affairs and Title IX administrators.

15.

On September 22, 2016, DOE met with CSC Title IX coordinator Anne DeMersseman.  She advised DeMersseman that Ige had also forcibly sexually assaulted her while she was working in May 2016, though she had not reported it.  DeMersseman interviewed DOE, and reviewed security video from Andrews Hall for the September 19 incident.  DeMersseman assured DOE that CSC would protect her and enable her to continue participating in class, work and other campus activities.

16.

Separately, DeMersseman also interviewed Anthony Ige.  Ige did not claim to have received affirmative or verbal consent from DOE.  Ige admitted that DOE told him to stop at least once.  Ige further admitted that DOE ran away from him and that he pursued her into a bathroom.

17.

DeMersseman determined that sexual acts occurred in both May and September 2016 that DOE did not consent to.  She advised DOE of her determination, and further advised DOE that she had requested a modified "no contact - no retaliation order" that would permanently restrict Ige from Andrews Hall – but only from Andrews Hall.  She also advised DOE that she would move Ige to another housing complex (either the Brooks or Edna housing complex).

18.

DeMersseman copied her findings to CSC President Randy Rhine, Vice-President Jon Hansen, Senior Director of Student Affairs Dr. Pat Beu, and Housing & Residence Life Director

Sherri Simons.

19.

Despite Ige's admission, CSC did not ban Ige from campus; nor did CSC move Ige to another housing complex. CSC banned Ige only from Andrews Hall; but as Andrews Hall is part of a multi-dormitory complex, Ige would still have the ability to encounter DOE in other parts of that complex if DOE attempted to work at her typical assigned post as a security officer.

20.

The prospect of encountering Ige while she was attempting to work at Andrews Hall overwhelmed DOE. Her panic attacks worsened in frequency and severity, and she began cutting herself as a coping mechanism.

21.

Because CSC would not ban Ige from the entire Andrews Hall complex, DOE had to request that her security assignment be moved to Brooks Hall, which is not part of the Andrews Hall complex. This resulted in a diminution of DOE's hours and, as such, her income.

22.

On October 25, CSC advised DOE that Ige's punishment would consist of the following:

a.   The "no contact order" between Ige and DOE was continued indefinitely. Ige was banned from Brooks residence hall until further notice;

b.   Ige would schedule weekly counseling with the CSC Counseling Office; the counselor would determine the need for adjustment of Ige's counseling needs every semester and make recommendations to the Senior Director of Student Affairs;

c.   Ige was now on "behavioral probation" until he graduates or otherwise departs CSC;

d.   Before December 1, 2016, Ige was to read "The Macho Paradox: Why Some Men Hurt Women and How All Men Can Help" and provide a journal of his

thoughts and understanding of the topics covered.  Additionally, Ige was to schedule a meeting with his counselor and CSC Vice-President Jon Hansen to discuss his journal and what he has learned; and

e.      Although there was no claim by anyone that alcohol had anything to do with Ige's sexual assault of DOE, Ige was required to successfully complete an online course entitled "Consent and Alcohol Wise" which is provided to all incoming students.

## 23.

Ige was allowed to continue attending classes, visiting the gym, visiting the library, visiting the student center and other common areas (indoor and outdoor), participating in student activities and otherwise roaming the campus, other than Brooks Hall.

## 24.

Ige retained the ability to see and be seen by DOE elsewhere on the campus, so long as he did not actually contact her.

## 25.

DOE thus had to choose between visiting the gym, visiting the library, visiting the student center and other common areas (indoor and outdoor), participating in student activities and otherwise traveling around campus and thereby risking an encounter with Ige in any of those areas, versus avoiding all public areas of campus in order to avoid Ige.  She chose the latter.

## 26.

There is only one counseling office at CSC.  It is located in the basement of Crites Hall. There are only two counselors employed there. One, Robin Bila, was DOE's counselor.  Presumably Ige would see the other counselor.

## 27.

The component of Ige's "punishment" that required him to seek counseling for raping DOE

created the potential for DOE to encounter Ige in the basement of Crites Hall if DOE continued to seek counseling for herself.  In advising DOE that it was requiring Ige to seek counseling at the CSC Counseling Center, CSC did not offer DOE an alternative for her own counseling; nor did CSC structure any time limitations on when Ige could visit the Counseling Center to eliminate the potential for DOE to encounter him there.

28.

To avoid that potential of encountering Ige at the Counseling Center, DOE discontinued counseling.  DOE did not have enough money to pay for private counseling off-campus.

29.

Thereafter, DOE encountered Ige in an academic building when she was on her way to take an exam.  Ige passed DOE in the hallway and made eye contact with her.  This triggered a panic attack in DOE.  DOE had to leave the building, miss her exam and make arrangements to take the exam later.

30.

DOE asked CSC what her options were, so that she could complete her coursework without encountering Ige.  In response, CSC approved DOE for independent study, and thereafter insisted that DOE had requested independent study.  DOE did not want independent study.  DOE wanted the freedom to attend class and work on-campus without the threat that she would encounter her rapist.

31.

CSC advised DOE that she could have another campus security officer escort her around campus.

32.

This proposal would not prevent DOE from seeing Ige. It would also make DOE conspicuous to other students and staff. DOE would visibly be "the student who needs a security escort."

33.

DOE did not want to be conspicuous. She declined that proposal. What DOE wanted was the freedom to attend classes, like any other student, without fear of encountering Ige.

34.

DOE expressed to CSC her concerns and her disappointment with CSC's refusal to ban Ige from campus. She did so multiple times, in writing and eventually through the assistance of counsel.

35.

In its responses, CSC insisted repeatedly that DOE had requested independent study, and that it had done everything appropriate to accommodate and protect DOE. If anything, CSC's responses exacerbated DOE's sense of despair and helplessness.

36.

If CSC ever did ban Ige from campus, it did not advise DOE. Despite that Ige admitted to non-consensual sexual contact and despite DeMersseman's finding that Ige had committed non-consensual sexual intercourse upon DOE twice in 2016, CSC allowed Ige to remain on-campus.

37.

CSC has banned from campus students suspected of sexual assault, even without a finding as to the truthfulness of the allegations; on information and belief, all of the victims whose suspected perpetrators were banned from campus were white/Caucasian. DOE is black/African. On information and belief, in at least one other case involving a black victim of sexual assault, CSC allowed the perpetrator to remain on campus.

38.

On information and belief, Ige was not restricted in any of his athletic pursuits in the 2016-2017 school year. If he was suspended or in any manner restricted in his athletic activities after admitting to non-consensual sexual intercourse with DOE, CSC did not advise DOE of such action.

39.

DOE completed her coursework from her apartment. She came to campus only to work. Because she did not have the opportunity to pick up shifts from other security workers once she transferred to work at Brooks Hall, and because she missed work due to panic attacks, DOE did not work as many hours as when she was assigned to work at Andrews Hall before September 19, 2016.

40.

DOE did not walk through graduation. She was afraid of encountering Ige. She received her college diploma through the mail.

41.

DOE did not return to counseling, as she could not afford private counseling and was afraid of encountering Ige at the CSC Counseling Center.

42.

DOE continued to experience panic attacks, insomnia, flashbacks, depression, anxiety, and other symptoms of rape trauma.

43.

DOE remains in Chadron; isolates herself in her apartment; and is attempting to find out-of-state employment so that she can leave Chadron. She cannot avail herself of CSC's Career & Academic Planning Services office, out of fear that she would encounter Ige on-campus.

44.

The Title IX office did not assist DOE. Through its insistence that it had accommodated

DOE, it discouraged DOE from requesting a traditional Title IX hearing.

## FIRST CAUSE OF ACTION

### VIOLATION OF TITLE IX – 20 U.S.C. § 1681 *et seq.*

45.

CSC's failure to protect DOE as described above was so severe, pervasive, and objectively offensive that it deprived DOE of access to educational opportunities and/or benefits provided by the school.

46.

CSC created and/or subjected DOE to a hostile educational environment in violation of Title IX, because:

a.   DOE was a member of a protected class;

b.   DOE was subjected to sexual harassment in the form of sexual assault by another student, Ige;

c.   CSC failed to implement policies that would have appropriately addressed the sexual assault by its student, Ige.

47.

CSC and its officials had actual knowledge of Ige's sexual assault of DOE.  CSC also had acknowledge knowledge of the resulting harm created by its failure to effectively discipline Ige and ban him from campus.

48.

CSC's failure to appropriately discipline DOE's attacker resulted in DOE, on the basis of her sex, being excluded form participation in, being denied benefits of, and being subjected to discrimination in CSC's education program in violation of Title IX.

49.

CSC failed to take immediate, effective remedial steps to resolve the complaint of sexual harassment. Instead it acted with deliberate indifference toward DOE, intensifying when it insisted to DOE that it had done all it needed to do to protect her.

50.

CSC persisted in its actions and inaction, even after it had actual knowledge that DOE was suffering.

51.

CSC engaged in a policy, pattern and practice of behavior designed to discourage and dissuade students who have been sexually assaulted from seeking prosecution and protection, and from pursuing completion of their degrees and involvement in on-campus activity after being sexually assaulted.

52.

This policy, pattern and practice constituted disparate treatment of female students, and had a disparate impact on female students.

53.

DOE has suffered and will continue to suffer psychological damage, and has lost educational benefits and income, as a direct and proximate result of CSC's deliberate indifference to her rights under Title IX.

## SECOND CAUSE OF ACTION

### RACE DISCRIMINATION – 42 U.S.C. § 1981 AND 42 U.S.C. § 2000d

54.

Title 42 U.S.C. § 1981 provides in relevant part that

[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...

This section prohibits racial discrimination in admission to educational programs.[1]

55.

Title 42 U.S.C. § 2000d provides that

[n]o person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

Foreign students attending American institutions of higher education that receive federal funding have standing to sue for intentional discrimination pursuant to Title VI of the Civil Rights Act of 1964.[2]

56.

If CSC has consistently banned alleged perpetrators of white victims from campus yet failed to ban alleged (and, in Ige's case, confessed) perpetrators of black victims from campus, that preferential protection of white sexual assault victims would constitute unlawful discrimination against black sexual assault victims, to include DOE.

57.

That informal policy, pattern and/or practice of behavior constitutes disparate treatment of black victims of sexual assault, and has a disparate impact on black victims of sexual assault, to include DOE.

---

[1]*See Runyon v. McCrary*, 427 U.S. 160, 172 (1976).

[2]*See Scarlett v. School of the Ozarks*, 780 F. Supp.2d 924 (W.D. Mo. 2011).

58.

DOE has suffered and will continue to suffer psychological damage, and has lost educational

benefits and income, as a direct and proximate result of CSC's deliberate indifference to her rights

under 42 U.S.C. § 1981 and 42 U.S.C. § 2000d.

## PUNITIVE DAMAGES

59.

In addition to compensatory damages, DOE makes a claim for punitive damages against

defendants in an amount to be proven at trial for the willful and wanton acts and omissions of

Defendants, to include violation of her civil rights as alleged herein.  The acts and omissions of

Defendants in this case were so gross and culpable in nature that they constitute reckless indifference

and wanton disregard for the law and for the safety of CSC students, including DOE.  Defendants

committed the acts and omissions alleged herein and subjected DOE to improper treatment that

caused DOE to suffer harm so severe that no person should be expected to endure it.  Defendants'

actions should be punished, and an example should be made so that these actions and omissions are

not repeated.

60.

This instance of reckless and callous indifference to DOE's safety and constitutional rights

should be punished through the imposition of punitive damages so as to make an example of conduct

that will not be tolerated.

## ATTORNEY'S FEES

61.

As a result of defendants' actions as alleged herein, DOE has been required to retain the

services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C.

§ 1988 for those violations covered by the Civil Rights Act.

## DAMAGES

62.

The acts and omissions of Defendants as set forth above have resulted in serious damage to

DOE.  DOE thus seeks recovery for the following damages:

A.     Compensatory damages in an amount to be proven at trial, for DOE's physical and mental pain and suffering, past and future, disability, inconvenience, and expense, past and future;

B.     Compensatory damages for the  violation of DOE's rights under the federal and state Constitutions;

C.     Punitive damages to punish and deter the reprehensible conduct alleged in this Complaint;

D.     Attorney's fees; and

E.     The costs of this action and such other and further relief as this Court deems equitable and proper.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows:

A.     Plaintiff prays for damages in an amount which will fairly and justly compensate for DOE's injuries and the violation of DOE's civil rights, her pain and suffering and other consequential damages flowing from the violations and torts set forth herein;

B.     Punitive damages in an amount sufficient to adequately punish defendants and to deter future conduct of the type alleged in this Complaint;

C.     For attorney's fees pursuant to 42 U.S.C. § 1988; and

D.     For the costs of this action and for such other and further relief as this Court deems equitable and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

DOE requests that this matter be tried to a jury in Omaha, Nebraska.

JANE DOE, Plaintiff,

By:   /s/ *Maren Lynn Chaloupka*
     Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Holyoke Snyder Chaloupka & Longoria,
P.C., L.L.O.
1714 2nd Avenue
P.O. Box 2424
Scottsbluff, NE  69363-2424
Telephone:  (308) 635-5000
Facsimile: (308) 635-8000
mlc@chhsclaw.net