IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>   vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska;<br><br>          Defendant. | **8:17CV265**<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Jane Doe moves for an order compelling Defendant to provide additional responses to Interrogatories and Requests for Production of Documents, and for an award of attorney fees. (Filing No. 57). Plaintiff further moves to stay case progression. (Filing No. 59). For the reasons stated below, Plaintiff's motions will be denied.

Pursuant to the court's scheduling order, "[m]otions to compel shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute." (Filing No. 22, at CM/ECF p. 2). When, as in this case, the responding party objects to discovery as overbroad, court conferences assist in clarifying what the moving party actually requires, and if necessary, narrowing the language of the discovery request or the timeframe at issue, thus promoting discovery of relevant information rather than formal motion practice. If these conferences are unsuccessful, the court enters an expedited formal motion schedule and will rule on the objections to the discovery requests—as written. This pre-motion conference requirement, implemented by the undersigned magistrate judge in 2015, has decreased the number of written

discovery motions by over 80%, and serves to keep cases progressing as scheduled despite discovery disagreements.

Contrary to the court's order, Plaintiff filed a motion to compel without first contacting the court to request a hearing. For this reason alone, Plaintiff's motion will be summarily denied. In addition, as explained below, upon review of the disputed requests as written, Defendant's objections will be sustained. Plaintiff's motion to compel will be denied both procedurally and on the merits, therefore mooting any request for sanctions. As to Plaintiff's motion to stay, the parties may proceed with depositions without awaiting additional written discovery responses, and the deposition deadline is over six weeks away. The court finds no good cause for amending the case progression schedule.

## STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, amended on December 1, 2015, limits the scope of discovery to

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Courts must examine each case individually to determine the weight and importance of the proportionality factors.

Although the burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court, a party

requesting discovery must show how the requested information is important to the issues and resolution of the case. The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992). Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case. But mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir.1972). "While the standard of relevance in the context of discovery is broader than in the context of admissibility, . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer, 981 F.2d at 380.

Sweeping discovery requests which are not tailored to obtain only information relevant or capable of leading to the discovery of information relevant to this case are overbroad. "A party resisting facially overbroad . . . discovery need not provide specific, detailed support" to raise and stand on its objections. Madden v. Antonov, 2014 WL 4295288, 3 (D. Neb. 2014); Carlton v. Union Pacific R. Co., 2006 WL 2220977, 5 (D. Neb. 2006) (citing Contracom Commodity Trading Co. v. Seaboard, 189 F.R.D. 655, 665 (D. Kan.1999).

## FACTUAL BACKGROUND

Plaintiff's complaint alleges Doe was a full-time student at Chadron State College from August 2013 until she graduated in December 2016. Doe alleges she was sexually assaulted by a fellow student in May and September of 2016, and

she reported the September incident to CSC officials. Her complaint alleges that although CSC investigated the incident and disciplined the assailant, it failed to expel him from school. Doe alleges the discipline imposed was inadequate to protect Doe: She was continually exposed to the risk of encountering her attacker on the CSC campus while she tried to complete her schooling. Doe alleges she experienced severe stress, panic attacks, lost wages, and other damages because CSC failed to adequately protect her from her assailant in violation of Title IX, 20 U.S.C. § 1681(a), and this failure to sufficiently discipline was racially motivated in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000d. (Filing No. 1).

Doe served written discovery on January 17, 2018. Defendant's responses were served on April 6, 2018, and supplemental responses and a privilege log were served on June 11, 2018. Plaintiff is dissatisfied with Defendant's responses and on July 10, 2018, filed a motion to compel further discovery responses and a request for sanctions. Plaintiff also argues case progression was stayed and new case progression deadlines are necessary due to Defendant's failure to comply with written discovery.

## Motion to Compel and Request for Sanctions
### (Filing No. 57)

**A.    The Discovery Requests**.

Categorized to avoid repetition, the disputed discovery requests, the parties' respective arguments, and the court's ruling as to that discovery are as follows:

1.    Training Materials.

REQUEST FOR PRODUCTION NO. 2: For the five years preceding these Requests, please produce all materials used to train persons holding the position of Title IX Coordinator (including interim Title IX Coordinators) at Chadron State College.

REQUEST FOR PRODUCTION NO. 13: For the five years preceding these Requests, please produce all materials relating to notification, investigation and/or disposition of sexual assaults, as well as relating to remedying discriminatory effects of sexual assault upon the victim, used to train the Title IX Coordinator (including interim Title IX Coordinators) and persons "other Chadron State College employees who assist with Title IX complaints" (see https://www.csc.edu/titleix/contact/index.csc).

Defendant produced copies of Title IX training materials provided to Sherri Simons, Anne DeMersseman, Jon Hansen, Pat Beu, Don Keiper and Robin Bila for the time period beginning August 1, 2013 and ending December 31, 2016. (Filing No. 61, at CM/ECF p. 14). Defendant otherwise objected, stating a request for "all materials relating to" training the Title IX Coordinators is overbroad and irrelevant because it is not limited to the years when Plaintiff attended CSC. In response, Plaintiff argues Defendant has failed to show how producing two additional years of materials would be burdensome. Doe also states that evaluating whether training programs changed may be relevant to whether the school met its Title IX obligations during the relevant time frame. In response, Defendant explains that CSC routinely changes its training or Title IX materials based upon evolving federal guidance and relevant jurisprudence, so prior policy changes are not relevant to determine if CSC appropriately responded to Plaintiff's complaint in September of 2016. (Filing No. 61, at CM/ECF p. 5).

The documents provided by Defendant are the programs it implemented. They date back to three years before Doe reported being sexually assaulted, and they cover the entire period of Plaintiff's attendance at CSC. Plaintiff's request for further documentation, which would include training which pre-dates the reported

assault by an additional two years and working drafts or discussion notes generated while creating the training programs, includes information not relevant to this case, and is overly broad and disproportionate to the needs of the case. Defendant's motion will be sustained.

2.   Record-Keeping

INTERROGATORY NO. 1: Identify all manner(s) in which Chadron State College records notifications, investigations and/or dispositions of sexual assaults. For each manner of recording, your Answer should indicate, for example:

a.    The office that records notifications, investigations and/or dispositions (i.e., Campus Security, Office of the Title IX Coordinator, Office of Student Affairs, Counseling Services, etc.);

b.    The protocol and/or policy providing for recording such notifications, investigations and/or dispositions;

c.    The program or application used for recording (i.e., Excel, Word/WordPerfect, etc.); and

d.    The name of the  document or file in  which recordings  of notifications, investigations and/or dispositions are kept.

Defendant answered:

[T]he Nebraska State College System Board of Trustees' Board Policy 3020 ("Board Policy 3020") governs the College's investigation of complaints of sexual violence and sex harassment in any form (including, but not limited to, sexual assault, stalking, dating violence, domestic violence, acquaintance, date or stranger-rape, nonconsensual sexual intercourse, sexual cyber-harassment or sexual bullying). Please see the attached Board Policy 3020 (for 2013-14, 2014-15, 2015-16 and 2016-17) for a detailed description of the complaint process, including each level of the process, the length of the process and types of records maintained (CSC000001-000072). Please also see the Nebraska State College System Board of Trustees' website, which references Board Policy 3020:

http://www.nscs.edu/policy-manual.htm. The Title IX Coordinator is responsible for maintaining information related to Title IX notifications, investigations and dispositions. Defendant also maintains statistical information regarding certain crimes on campus as required by federal law, including the Clery Act.

(Filing No. 58-1, at CM/ECF p. 8). Defendant objected to providing any additional information, explaining that Doe's interrogatory was unlimited as to time or to sexual assaults that occurred on campus. In addition, Defendant explains that numerous CSC employees are responsible for reporting violations, and to require each of these employees to enumerate and list every method they use to maintain their records is overbroad and irrelevant.

Plaintiff argues the duty to report exists as to both on- and off-campus assaults, and a review of the recording processes used both before and during the relevant time frame may show whether the numbers reported are accurate, whether CSC employees were adequately trained on the subject of campus sexual assault, and whether recording processes have changed to hinder outside review of data reflecting a campus sexual assault problem or its magnitude.

Plaintiff's Interrogatory No. 1, as written, is unlimited as to time. And even if the court accepts the ten-year limitation offered in Plaintiff's briefing, the court has reviewed the complaint and is not convinced Defendant's record-keeping system, particularly dating back a decade or more, has anything to do with whether CSC adequately disciplined Doe's assailant or that this alleged insufficient discipline was racially motivated. Plaintiff's Interrogatory No. 1 is overbroad because it encompasses information that is neither relevant nor proportional to the needs of the case. Defendant's objection will be sustained.

3. Reported Incidents/Complaints and Criticism.

INTERROGATORY NO. 2: For the ten years preceding the date of your Answer, please identify the sexual assaults on the campus of Chadron State College. For each sexual assault identified, your answer should include:

a.      The date of notification of the sexual assault;

b.      Whether the sexual assault was investigated by the Title IX Coordinator;

c.      Whether the Title IX Coordinator generated a report (and, if so, an identifier for such report, such as a case number or report number, that would support a request for production);

d.      The discipline imposed, if any, on the assailant;

e.      The race of the complainant;

f.      The race of the assailant; and

g.      Any other agency, office or organization to which the sexual assault was reported.

REQUEST FOR PRODUCTION NO. 14: For the five years preceding these Requests, please produce all documentation of communications relating to notification, investigation, and/or disposition of sexual assaults between any agent, employee or student of Chadron State College and the System Director of Title IX, Board of Trustees of Nebraska State College System.

REQUEST FOR PRODUCTION NO. 15: Please produce all statistical and/or aggregate data relating to sexual violence maintained by the System Director of Title IX, Board of Trustees of Nebraska State College System.

REQUEST FOR PRODUCTION NO. 16: Please produce all reports by any agent or employee of Chadron State College (whether submitted to the Board of Trustees of the Nebraska State College System, to Chadron State College central administration, to the Higher Learning Commission, to the Office of Civil Rights, or to any other body or individual) purporting to summarize activity of the Title IX Coordinator relating to sexual assault.

REQUEST FOR PRODUCTION NO. 20: Has Chadron State College, or Board of Trustees of Nebraska State College System, received or been the subject of any complaints and/or criticism regarding campus sexual violence? If so, please produce all documentation of such complaints. This includes complaints from individuals as well as from organizations (including student organizations).

In response to each of these discovery requests, Defendant produced a spreadsheet summary of all sexual assault Title IX investigations for the time period of August 1, 2013 to the present, including a general statement of the allegations, a summary of CSC's investigation, and the involved parties' race information (if available). Defendant objects to producing additional information, stating "all documentation of complaints" is overbroad per se, and further objects that information for a time frame beyond Plaintiff's attendance at CSC is overbroad, complaints or criticism regarding other instances of sexual violence have no relevance to Plaintiff's allegations, and requests for reports to any "agency, office or organization" is both overbroad and vague. Defendant further objects to producing information protected by the attorney-client or work product privilege, or documents otherwise prepared in anticipation of litigation.

As to Interrogatory No. 2, Plaintiff argues the 10-year time frame correlates with the time frame of Defendant's requests for Plaintiff's health records. The court will not consider this "what comes around goes around" argument when deciding discovery disputes. Rather, the court looks at the allegations at issue and the discovery requests in dispute, and it then determines if the discovery objections are supported by the law and rules.

Plaintiff alleges a ten-year time frame for Interrogatory No. 2 may uncover information relevant to prove CSC's "policy, pattern and practice of behavior" as alleged in Plaintiff's complaint. Plaintiff also argues CSC should be required to

disclose what it knows about reports to law enforcement, mental health providers or support organizations, and as to Request 5, produce copies of all documentation of communications regarding sexual assault for a five-year period. As to Requests 15, 16, and 20, for an unlimited time period, Plaintiff requests sexual-violence information for the Nebraska State College System, not just Chadron State College, and whether others complained about or criticized CSC regarding the incidence of sexual violence at CSC (including off-campus misconduct), or CSC's response to sexual violence.

As to Interrogatory 2 and Request 14, Plaintiff has received a summary of all sexual assault Title IX investigations, the outcome of those investigations, and the race of the persons involved for the three-year period prior to Plaintiff's reported sexual assault and during her time on campus. This data, especially compared with Chadron Police Department records already subpoenaed by Plaintiff, is sufficient to illuminate whether any "policy, pattern and practice of behavior" relevant to Plaintiff's allegations was implemented by CSC while Doe attended that school. In addition, disclosing further documentation as requested in Request 14 would undermine the confidentiality of students who are not parties to this action and who have not consented to releasing that information.

As to Production Requests 15, 16, and 20, these requests as written are overbroad. They are unlimited as to time. They are also not limited to the location at issue or the CSC personnel involved in Plaintiff's claims. Courts limit the discovery of institutional records to the location where the alleged misconduct occurred unless the moving party shows that regional discovery is needed. Sallis v. University of Minn., 408 F.3d 470, 478 (8th Cir. 2005). This showing of need is not met by merely claiming an adverse consequence arose or may have occurred

due to an entity-wide policy or its interpretation. Semple v. Federal Exp. Corp., 566 F.3d 788, 794 (8th Cir. 2009).

Under the facts of record, the court finds Defendant has already produced information proportionate to the needs of the case. Fully responding to Plaintiff's Interrogatory 2, and its Requests 14, 15, 16, and 20, as written, would necessitate locating and producing information that is irrelevant and disproportionate to the needs of the case as defined under the federal rules. Defendant's objections will be sustained.

    4.    <u>Clery Act Reports</u>.

REQUEST FOR PRODUCTION NO. 3: Please produce all information submitted by Chadron State College regarding sexual assault pursuant to 20 U.S.C. § 1092(f).

Defendant produced both drafts and published Clery Act reports for years 2011-2016. Defendant objects to providing further information, stating the request is overly broad and irrelevant because it requests information beyond the relevant time frame and a request for "all information submitted by Chadron State College" is vague, ambiguous, and overbroad.

Plaintiff argues she is entitled to all information submitted to the Secretary of the United States Department of Information, pursuant to 34 C.F.R. §§ 668.46(c) and 668.49(c), and all information submitted to students, employees, the Board of Trustees, or other individuals or organizations, so Plaintiff can confirm or refute that CSC made a reasonable, good-faith effort to obtain Clery Act crime statistics from local law enforcement agencies. Plaintiff explains that by statute, the request

is limited to the eight years during which the institution must keep statistics to comply with the Clery Act.[1]

Plaintiff has received the Clery Act reports for 2011 through 2016—a period that includes two years before Plaintiff attended CSC. Defendant's production is proportionate to the needs of the case. Plaintiff's Request No. 3, which includes no time limit, is overbroad. Defendant's objections will be sustained.

> 5.    All Communications between CSC and the NSCS Board of Trustees relating to sexual assault.
>
> REQUEST FOR PRODUCTION NO. 5: For the ten years preceding your Response, produce all communications between any employee or agent of Chadron State College and any employee or agent of the Board of Trustees of the Nebraska State College System relating to sexual assault.

Defendant responded by producing its non-privileged communications regarding Plaintiff's allegations of sexual assault, CSC's response, and the claims or defenses raised in the pleadings. But it objects to providing "all communications" as per se objectionable and overbroad. It further objects that the request seeks information protected by the attorney-client or work product doctrine. (Filing No. 61, at CM/ECF pp. 8-9).

Plaintiff explains she is not seeking email communications regarding setting up training times, etc., but is seeking policy drafts and any associated commentary along with any documents indicating a need to revise policies or training, and any contacts between CSC employees or agents of CSC and the Board of Trustees

---

[1] The court notes that an institution must keep the records for at least eight years, but it can keep the information for a longer period. Thus, arguing the minimum mandatory time period for retaining documents does not actually place an eight-year limit Plaintiff's requests.

since 2008 with questions, reports, or concerns relating to sexual assault. Plaintiff challenges Defendant's privilege log as insufficient and likely incomplete.

The privilege log of record is sufficient. There is nothing of record to support Plaintiff's claim that the privilege log is incomplete. And contrary to Plaintiff's briefing, Plaintiff's Request No. 5, as written, is not limited to certain categories of communications "relating to sexual assault." It encompasses every communication between every employee of CSC and every employee of the NSCS Board of Trustees about the topic of sexual assault for a period of ten years. It is overbroad per se. Defendant's objection is sustained.

6. <u>Ige Information</u>.

INTERROGATORY NO. 6: Identify all communications between any agent or employee of Chadron State College and/or Board of Trustees of Nebraska State College System and Anthony Ige regarding Title IX, DOE, sexual assault, disciplinary procedures, and/or compliance with the discipline imposed on Ige.

REQUEST FOR PRODUCTION NO. 6: Please produce all emails, memoranda, correspondence, notices, directives or other documentation of communications to or from any employee, agent or student of Chadron State College regarding Anthony Ige. This includes, but is not limited to, documentation of communication with his instructors; with his coaches; with Campus Security; with law enforcement; with the Dawes County Attorney; communication with any employee or agent of any other organization or agency (federal, state, local or otherwise); communications with any employee or agent of the Board of Trustees of the State College System; and any other documentation of communication to or from Chadron State College agents, employees or students.

REQUEST FOR PRODUCTION NO. 10: Produce all contents of all files maintained on Anthony Ige. This includes, but is not limited to, academic files; employment files; disciplinary files; Title IX files;

housing files; athletic files; files showing use of student identification cards; and Campus Security files.

REQUEST FOR PRODUCTION NO. 17: Please produce all documentation relating to whether Anthony Ige complied with any term of the discipline imposed on him for sexually assaulting DOE.

As to Interrogatory No. 6, CSC responded that Anthony Ige completed the Consent & Respect course and also read Jackson Katz's The Macho Paradox: Why Some Men Hurt Women and How All Men Can Help. Ige met with Pat Beu, Jerry Cassiday and Jon Hansen on December 2, 2016, for two to three hours to discuss what Ige had learned from reading the book. Ige also completed six counseling sessions with Jerry Cassiday (Student Counselor for CSC) between October 25, 2016 and December 13, 2016.

As to the production requests, Defendant objects to providing "all documentation relating to …" and "all contents of all files" it possesses regarding Ige as overbroad and protected from unnecessary disclosure under state and federal law.

Plaintiff argues that defendant's concerns over further use and dissemination of Ige's confidential information are fully ameliorated by the protective order in place. Plaintiff claims the documents requested are relevant to notice; that Board Policy 3100 provides that "disciplinary sanctions may include warnings, demands for restitution or reimbursement, fines, a period of probation, remedial behavioral requirements, remedial educational requirements, suspension or expulsion," and discovery regarding Defendant's knowledge of Ige's history of alleged misconduct and/or antisocial behavior is relevant. Plaintiff further argues:

Files showing the use of student identification cards would identify Ige's whereabouts and activities on campus between the date of the disciplinary sanction and Plaintiff's graduation. Athletic files would indicate whether Ige was ever a student-athlete at CSC and, if so, the circumstances under which that came to an end; employment, Campus Security, disciplinary and Title IX files would indicate CSC's knowledge of Ige's history of alleged misconduct and/or antisocial behavior on campus. Academic files would show whether Ige was in compliance with Board Policies regarding academic eligibility to remain at CSC.

Based on Defendant's response, it has produced all non-privileged documents in its possession, custody, and control regarding the relationship between Plaintiff and Anthony Ige, Plaintiff's allegations of sexual assault, and CSC's response thereto. CSC further produced student disciplinary records for Ige and it produced an incident report where a Residence Hall Advisor incorrectly believed that Ige may have entered the dorms after his ban was in place. Defendant likewise produced the incident report regarding the No Contact Order referred to in Plaintiff's motion, a document confirming Ige's student-athlete status (he was not a student athlete), and Security Access reports showing both Ige's and Plaintiff's use of their Student-ID cards around campus during the relevant time period. Defendant produced documents in its possession, custody, and control demonstrating Ige's compliance with the conditions set forth in Dr. Hanson's October 24, 2016 letter in response to Ige's admission of misconduct.

Contrary to Plaintiff's argument, the court is not convinced that Ige's academic records, his academic advisor or career counseling records, tuition payment records, or any records regarding Ige's conduct or performance while still enrolled at CSC after Plaintiff graduated, have anything to do with the allegations in Plaintiff's complaint. Plaintiff is not entitled to Ige's entire educational record at CSC, or to all communications between all CSC employees about Ige. As written, Interrogatory 6 and Requests 6, 10, and 17 are overbroad and request information

which is irrelevant or at the very least, disproportionate to the needs of the case. Defendant's objections will be sustained.

7.    <u>Doe Communications</u>.

REQUEST FOR PRODUCTION NO. 7: Please produce all emails, memoranda, correspondence, notices, directives or other documentation of communications to or from any employee, agent or student of Chadron State College regarding DOE. This includes communications with her instructors; communications with medical or counseling personnel; communications with her employment supervisor or co-workers; communication with any employee or agent of any other organization or agency (federal, state, local or otherwise); communications with any student; communications with any employee or agent of the Board of Trustees of the State College System; and any other documentation of communication to or from Chadron State College agents, employees or students.

Defendant produced all non-privileged, responsive documents in its possession, custody, and control regarding the relationship between Plaintiff and Anthony Ige, Plaintiff's allegations of sexual assault, CSC's response, and the communications between Doe and CSC regarding her employment and moves following her graduation from CSC. Defendant further produced documents in its possession regarding issues Plaintiff had with her former boyfriend, Residence Hall Advisor reports that mentioned Plaintiff, and documents relating to Plaintiff's therapy and immigration concerns.

Plaintiff argues she is seeking written communications showing Defendant's employees' statements about Plaintiff during her years at CSC, e.g., communications regarding her interactions with Ige or others or any notice that Plaintiff was struggling emotionally. Defendant objected to providing every document CSC possesses regarding Plaintiff—which could include such things as

questions about an assignment, generic mailings regarding class schedules, or other documents having no bearing on this lawsuit. And it objected to discovery requests which would require CSC to search every employee or student file, and the email accounts of every employee to see if Doe was mentioned. Ex. C, pg. 18 ([Filing No. 61, at CM/ECF pp. 10-11]).

Defendant's objections are sustained. Plaintiff's Request No. 7, as written, encompasses irrelevant information and is overly broad and unduly burdensome.

8.    Consultant Services.

> INTERROGATORY NO. 3: Has Defendant ever sought the services of a consultant to review any aspect of campus sexual violence at Chadron State College? If so, please identify the consultant(s) and any reports he or she produced.

> REQUEST FOR PRODUCTION NO. 9: Relative to any consultant identified in your Answer to the immediately preceding Interrogatory, produce all documentation of communications with such consultant and all reports, including draft reports, of such consultant.

Defendant objected that this request was overbroad as unlimited in time, or to the policies at issue in this case; that the term "consultant" was vague; and that the request encompasses information protected by the attorney-client privilege and work product doctrine. That said, Defendant unequivocally stated that it has never asked for, nor brought in, a third-party to specifically examine sexual violence at Chadron State College, and no responsive documents exist.

Defendant has fully responded to Interrogatory No. 3 and Request No. 9.

9.    Investigatory and Disciplinary File for this Case.

REQUEST FOR PRODUCTION NO. 11: Produce the complete investigatory and disciplinary file for DOE's complaint of sexual assault by Anthony Ige. This includes documents kept digitally, including email communications.

Given the description of documents already produced, Defendant has complied with this request. It need not further respond to Request No. 11.

10. Consultations on Discipline for this Case.

INTERROGATORY NO. 4: Identify all individuals consulted in the determination of the appropriate disciplinary response for Anthony Ige.

Assuming "consulted" refers to those who played a substantive role in determining CSC's response to Plaintiff's allegations of sexual assault, Defendant responded that Anne DeMersseman, Jon Hansen, Pat Beu, Taylor Sinclair, Kristin Petersen, and Plaintiff were substantively involved in CSC's disciplinary response to Plaintiff's allegations, and these same CSC people, along with Don Keiper, Sherri Simons, Dr. Michael Bogner, and Maren Chaloupka, were involved in selecting and affording accommodations to Plaintiff following her allegations of sexual assault. CSC objected that the terms "consulted" and "accommodation" are vague, and that requesting information regarding disciplinary matters unrelated to this case is overbroad and irrelevant. It further objected to providing information protected by the attorney-client privilege or work product doctrine.

Plaintiff questions whether the privilege log is complete and whether Baird Holm was the only "outside legal counsel" consulted. Defendant states that all documents withheld from production on the basis of privilege are identified in the privilege log, and there is no evidence to the contrary. (Filing No. 61, at CM/ECF

p. 13). Defendant's privilege log states who authored and received the communications, including the names of any lawyers.

Defendant need not further respond to Interrogatory No. 4.

11.    Catchall Request.

REQUEST FOR PRODUCTION NO. 18:    To    the    extent    not produced in response to . . . Requests [1-17], please produce any memoranda, correspondence, emails, disciplinary records, agendas, new policies, or other documents which came into existence as a result of the events at issue in this case.

Defendant has produced all non-privileged, responsive documents in its possession, custody, and control regarding the relationship between Plaintiff and Anthony Ige, Plaintiff's allegations of sexual assault, and CSC's response. While it objected to producing "new policies … that came into existence" as seeking evidence of inadmissible subsequent remedial measures, it further states that no "new policies" came into existence as a result of Plaintiff's claim. (Filing No. 61, at CM/ECF p. 17).

Defendant need not further respond to Request No. 18.

12.    DeMersseman Personnel File.

REQUEST    FOR    PRODUCTION    NO.    19:    Please    produce    the personnel file for Anne DeMersseman.

Defendant did not provide information in response to this request. It objected that Plaintiff had failed to show how this information was relevant, and asked Plaintiff to narrow her request and explain why the requested file was relevant.

Plaintiff states Ms. DeMersseman was the interim Title IX Coordinator at the time of the events at issue, and requested documents will reveal how she became the interim Title IX Coordinator, her job performance in that capacity, and her transition out of that role when CSC hired Ted Tewahade as its Title IX Coordinator and moved Ms. DeMersseman to her role as one of two Title IX Designees.

Defendant's brief states DeMersseman's personnel file does not contain documentation regarding "how she became the interim Title IX Coordinator," her transition out of that role, any documents mentioning Plaintiff or Ige, or any documentation of requests for consultation on Title IX investigations. Defendant has produced a copy of the job description for the Associate Vice President of Human Resources position, which previously included Title IX duties. (Filing No. 61, at CM/ECF p. 17-18). Other information likely contained within that file (pay rates, benefit elections, her job application, references, etc.) has nothing to do with Plaintiff's claims.

Even if Plaintiff had shown that additional portions of DeMersseman's personnel file may lead to the discovery of relevant information,

> [C]ourts are reluctant to permit discovery, when the requested disclosures would intrude upon the privacy interests of other, non-party employees. . . . As a consequence, a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals.

Onwuka v. Federal Express Corp., 178 F.R.D. 508, 517 (D. Minn. 1997). See also Shakman v. City of Chicago, 2014 WL 711010, 4 (N.D. Ill. 2014) (holding employees have a recognized interest in keeping their personal information from personnel files out of the public domain). "In the ordinary workplace setting, an

employee has a privacy interest in her employment records, and disciplinary actions generally are not public." Shakman, 2014 WL 711010, at *4.

Request No. 19, as written, demands production of irrelevant and personal information and is overly broad. Defendant's objection is sustained.

13.     Internal Audits.

INTERROGATORY NO. 7: Has Chadron State College, or Board of Trustees of Nebraska State College System, conducted any internal audits or reviews of the efficacy of its program for preventing, investigating and responding to campus sexual violence? If so, identify the date of the audit or review and the office and/or individuals performing and receiving the audit or review.

REQUEST FOR PRODUCTION NO. 21: Please produce any documentation generated in connection with audits/reviews identified in your Answer to the immediately preceding Interrogatory. This includes, but is not limited to, assignments, reports, emails, comments, cover letters, and any other documentation of any manner.

Defendant objected to these discovery requests as unlimited in time, to CSC, or to audits regarding the allegations in Plaintiff's complaint. CSC responded that the Nebraska State College System hired Taylor Sinclair as the System Director for Title IX in October 2016, and she evaluated the Title IX position across each of the Nebraska State College System campuses. As a result, several changes were made to the Title IX Coordinator positions at Chadron State College, including hiring Ted Tewahade as its Title IX Coordinator, with two Title IX Designees, Deena Kennel and Anne DeMersseman. In addition, Ms. Sinclair developed a series of relationship workshops for students regarding consent, reporting options, and healthy relationships, among other topics.

Plaintiff has now agreed to a 10-year time limitation, but continues to request any audits comparing data from CSC with other colleges within the Nebraska State College System. However, Plaintiff has failed to show how securing this comparative information is relevant to her claims, or if relevant at all, proportionate to proving the issues raised in the pleadings.

Plaintiff's discovery requests, as written, are overbroad. They encompass information that is irrelevant. Defendant's objections will be sustained.

**B.     Request for Sanctions**.

Plaintiff has requested sanctions for failure to comply with discovery. Since the court is denying Plaintiff's motion to compel, sanctions will not be awarded to Plaintiff.[2]

## Motion to Stay
([Filing No. 59](#))

Plaintiff has filed a motion to stay, arguing the need for formal motion practice on disputed written discovery has delayed case progression. The court disagrees for two reasons: 1) Plaintiff's motion to compel is denied; and 2) that result could have been known, or at the very least foreseen, two months ago had

---

[2] Even had I ruled in favor of Plaintiff on the motion to compel, any sanctions award (if any) would have been drastically curtailed. Had Plaintiff complied with the court's order requiring a pre-motion conference, the issues raised in Plaintiff's motion to compel could have been fully addressed in a two-hour oral hearing on the record in June of 2018. Instead, Plaintiff filed a motion to compel on July 10, 2018, the court awaited Defendant's response, the court awaited Plaintiff's reply (which was never filed), and the parties then awaited this written order.

Plaintiff engaged in the pre-motion conference as required under the court's order. (Filing No. 22; 58-1, at CM/ECF p. 4). Plaintiff's motion to stay will be denied.

Accordingly,

IT IS ORDERED:

1)      Plaintiff's motion to compel, (Filing No. 57), is denied.

2)      Plaintiff's motion to stay, (Filing No. 59), is denied.

August 31, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge