IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>   Plaintiff,<br><br> vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska;<br><br>   Defendant. | **8:17CV265**<br><br><br>**ORDER** |

Defendant noticed the deposition of Plaintiff's counsel, with deposition currently scheduled for January 7, 2019. (Filing No. 89, Filing No. 94-1, at CM/ECF p. 55). Plaintiff moved to quash that notice, for a protective order, and for a reward of the attorney fees expended in filing the motion. (Filing No. 92). For the reasons stated below,[1] the motion will be denied.

## STATEMENT OF FACTS

Plaintiff's complaint alleges Doe was a full-time student at Chadron State College (CSC) from August 2013 until she graduated in December 2016. Doe alleges she was sexually assaulted by a fellow student, and CSC investigated the incident. CSC concluded the sexual assault occurred, and on October 25, 2016, the assailant, Ige, was disciplined, but was not expelled from school.

---

[1] To avoid case progression delays, the parties were placed on an expedited motion and briefing schedule. Consistent with that scheduling, the court enters this expedited order. As such, this order does not separately discuss each case cited in the parties' briefs.

([Filing No. 94-1, at CM/ECF p. 57](#)). The discipline included imposing a No Contact Order prohibiting Ige from contacting Doe. Doe complained that the discipline was too lenient; that so long as Ige was on the campus, she would possibly encounter him—a risk that was interfering with her on-campus employment and counseling, her mental health, and her ability to fully attend school. ([Filing No. 94-1, at CM/ECF pp. 57-58](#)). An email sent by Defendant's Vice President for Student Affairs, Jon Hansen, on November 14, 2016 explained the school's position. ([Filing No. 94-1, at CM/ECF p. 59-61](#)). The email ended, "Please let me, your supervisor, or DeMersseman know if you have any questions or concerns." ([Filing No. 94-1, at CM/ECF p. 61](#)). Plaintiff responded by asking "what options are available to me such as completing the rest of my semester online or transferring?" ([Filing No. 94-1, at CM/ECF p. 62](#)). Hansen responded to this email on November 16, 2018. ([Filing No. 94-1, at CM/ECF p. 63](#)). This was the last communication between Doe herself and the CSC administration regarding the facts underlying this lawsuit. ([Filing No. 94-1, at CM/ECF p. 33](#)).

Doe's counsel sent a letter to CSC on November 18, 2016, which notified CSC that the Chaloupka, Holyoke law firm represents Doe, demanded that CSC preserve all evidence relevant to Doe's case, and directed CSC to "address further communications regarding [Doe] to [Doe's counsel] rather than contacting [Doe] directly." ([Filing No. 94-1, at CM/ECF p. 18](#)). On behalf of Defendant, Taylor Sinclair acknowledged receipt of the letter on November 22, 2016. ([Filing No. 94-1, at CM/ECF p. 20](#)). Doe's counsel sent a letter to CSC on Doe's behalf on November 23, 2016, asking that Doe's assailant be expelled from the school and that Doe be permitted to attend school as a normal student—without a security escort or taking independent study courses. ([Filing No. 94-1, at CM/ECF p. 34](#)). Doe graduated a month later, on December 16, 2016.

Does' complaint alleges she could not attend counseling because CSC failed to offer time and location options that did not pose a risk of encountering her assailant. (Filing No. 1, at CM/ECF pp. 6-7, ¶¶ 27-28). See also, Filing No. 97-2, at CM/ECF p. 2-3, Response to Inter. No. 9. She alleges she did encounter her assailant in an academic building, had a panic attack, and was unable to complete an exam at the scheduled time. (Filing No. 1, at CM/ECF p. 7, ¶ 29). See also, Filing No. 97-2, at CM/ECF p. 2-3, Response to Inter. No. 9. Essentially summarizing the November 2016 email exchanges between Doe and CSC, and thereafter Doe's counsel and CSC, Doe's complaint alleges:

30. DOE asked CSC what her options were, so that she could complete her coursework without encountering Ige. In response, CSC approved DOE for independent study, and thereafter insisted that DOE had requested independent study. DOE did not want independent study. DOE wanted the freedom to attend class and work on-campus without the threat that she would encounter her rapist.

31. CSC advised DOE that she could have another campus security officer escort her around campus.

32. This proposal would not prevent DOE from seeing Ige. It would also make DOE conspicuous to other students and staff. DOE would visibly be "the student who needs a security escort."

33. DOE did not want to be conspicuous. She declined that proposal. What DOE wanted was the freedom to attend classes, like any other student, without fear of encountering Ige.

34. DOE expressed to CSC her concerns and her disappointment with CSC's refusal to ban Ige from campus. She did so multiple times, in writing and eventually through the assistance of counsel.

35. In its responses, CSC insisted repeatedly that DOE had requested independent study, and that it had done everything appropriate to accommodate and protect DOE. If anything, CSC's responses exacerbated DOE's sense of despair and helplessness.

Filing No. 1, at CM/ECF pp. 7-8, ¶¶ 30-35). In her interrogatory responses, Doe states "Plaintiff also saw Ige when she returned to work on the representation that Ige would not be in the housing complex. She saw Ige that night, which is how Plaintiff learned that Ige had not been moved." (Filing No. 97-2, at CM/ECF p. 7, Supp. Response to Inter. No. 9). Does' complaint alleges Defendant acted with deliberate indifference in failing to protect and assist Doe while she completed her education at CSC.

CSC's answer denies any allegations of deliberate indifference, specifically alleging:

> Doe never reported to CSC that Ige violated the No Contact Order or that she had subsequently encountered Ige on campus. CSC also offered Doe a security escort upon request. CSC repeatedly requested of both Doe and her legal counsel that they inform CSC of any further concerns or necessary accommodations. Neither Doe nor her counsel ever told CSC that Doe was concerned about encountering [her assailant] in the counseling center, or that Doe may need alternate counseling locations or times.

(Filing No. 18, at CM/ECF pp. 10-11, ¶ 27).

Doe's counsel warned "this is not a one-way street:" "The development of this evidence, if allowed, should concomitantly allow the undersigned to take depositions duces tecum – with no privileges available – of Taylor Sinclair and Kristin Peterson." (Filing No. 93, at CM/ECF p. 41). "If you're going to push to depose me, I'll probably need to depose Taylor Sinclair as well." (Filing No. 97-2, at CM/ECF p. 8). Taylor Sinclair is an attorney employed by Defendant. "Defendant has never taken the position with Plaintiff's counsel that Taylor Sinclair, the NSCS's Title IX Director, is protected from deposition. Although

Sinclair is a licensed attorney, her relevant actions on behalf of the NSCS were not in her capacity as an attorney." ([Filing No. 97-1, at CM/ECF p. 1](), ¶ 6).

To avoid noticing the deposition of Doe's counsel, Defendant proposed a stipulation on November 20, 2018. (See, [Filing No. 94-1, at CM/ECF p. 12-13]()). Defendant believes this stipulation would render the testimony Doe's counsel as undisputed, thereby sidestepping any need to depose Doe's counsel. The stipulation provides foundation for admitting the emails and letters exchanged between CSC and Doe's counsel into evidence and confirms that no other communications occurred between Doe's counsel and CSC between November 16 and December 16, 2016 other than those reflected in the stipulation's attachments. ([Filing No. 94-1, at CM/ECF p. 11]()).

Doe's counsel asked why the stipulation was necessary. ([Filing No. 94-1, at CM/ECF p. 10]()). In response, defense counsel explained:

> By requiring that all communications with Ms. [Doe] regarding her Title IX complaint and remaining time on campus be filtered through you, you made yourself her spokesperson. In fact, you explicitly instructed the College to cease any direct communication with Ms. [Doe]. Consequently, the College's knowledge of Ms. [Doe]'s needs or accommodations, her access to educational opportunities, or her concerns regarding encountering lge necessarily depends on what you communicated to the College and when. The information you provided to the College and all communications you had regarding Ms. [Doe] need to be confirmed for purposes of summary judgment and trial. Ms. [Doe] cannot testify as to communications to which she was not a party. Thus, you are a necessary witness.

([Filing No. 94-1, at CM/ECF p. 39]()). See also, ([Filing No. 94-1, at CM/ECF p. 43]() ("[W]e are not 'making you a witness,' but the very nature of the allegations in the Complaint, which encompass a period of time where you were acting as the sole communicator on behalf of a student, necessarily implicate you as a witness.")).

Defendant argues that the communications made on Doe's behalf are highly relevant to any claim that CSC was deliberately indifferent to Doe's ongoing needs.

Doe's counsel does not object to the substance of the stipulation, and she does not claim that communications occurred other than those disclosed in the stipulation. (Filing No. 94-1, at CM/ECF p. 47, 50-51). Her concern is that the context of her statements will be misconstrued, and that the stipulation will be misused at trial. (Filing No. 94-1, at CM/ECF p. 51). Doe's counsel explains, "What I do not want is whomever tries this case waving 'Jane Doe's own lawyer's testimony' in front of a jury and attributing statements and intentions and implications to me that can only be countered by me taking the witness stand, which is inappropriate." (Filing No. 94-1, at CM/ECF p. 43). Does' counsel asked defense counsel to re-draft the stipulation as Requests for Admissions.

Defense counsel responded, "[T}he proposed stipulations are between the parties, and aren't the 'testimony of Jane Doe's lawyer.' Thus, I see no reason to spend the time reframing the stipulations as admissions when they would have the exact same effect at trial, nor have you provided such a reason." (Filing No. 94-1, at CM/ECF p. 44).

Doe's counsel ultimately responded, "Better check with the Magistrate first." (Filing No. 94-1, at CM/ECF p. 45).

ANALYSIS

Doe moves to quash the deposition notice served to depose her attorney. To defeat this motion, Defendant must show that "(1) no other means exist to

obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002) (citations omitted). This difficult burden protects against the "harassing practice of deposing opposing counsel" which often "does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." Shelton v. American Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986).

Defendant argues that by becoming Doe's contact person while the events at issue occurred, Doe's counsel gained first-hand knowledge regarding the merits of the case, making her a material, and perhaps necessary, witness for trial. See e.g., Applied Underwriters, Inc. v. Top's Pers., Inc., No. 8:15CV90, 2017 WL 3396453, at *9 (D. Neb. Aug. 7, 2017) (Zwart, M.J.); Cascone v. Niles Home for Children, 897 F. Supp. 1263, 1266 (W.D. Mo. 1995); Beller v. Crow, 274 Neb. 603 (2007) (overruled on other grounds), Heckman v. Marchio, 296 Neb. 458, 894 N.W.2d 296 (2017). Defendant proposed a stipulation of facts to avoid needing to depose Doe's counsel. A lawyer who is a material witness to some facts may represent a client at trial if "the lawyer's testimony relates to an issue that the lawyer reasonably believes will not be contested . . .." Restatement (Third) of the Law Governing Lawyers § 108 (2)(a) (2000).

Plaintiff's counsel argues: 1) deposing her regarding pre-suit communications with Defendant may necessitate disqualifying Doe's counsel of choice; 2) will delve into attorney-client privileged and work product communications; and 3) the testimony of Doe's counsel is not relevant or crucial.

1.    Risk of Disqualification.

Doe's counsel argues the deposition notice is a tactical attempt to bait her into becoming a material witness and thereby disqualified from representing Doe at trial. She explains:

> Defendant's proposed Stipulation asks for more than the undersigned's agreement to the dates [of] her two letters to CSC. It asks that she agree that she "acted as an agent for DOE," and thus as a character in the story of these events. And its concluding paragraph, that "the foregoing documents constitute the only communications between Ms. Chaloupka and Chadron State College from Nov. 16, 2016 to the date of DOE's graduation," carry the implication that if the undersigned elected to not engage with Defendant's in-house lawyers (Taylor Sinclair and Kristin Peterson) in the subjects those lawyers raised in their responsive correspondence, then that must have been some sort of concession that Defendant can now use as evidence.

(Filing No. 93, at CM/ECF p. 20). As Doe's counsel explains, she is Doe's chosen and only attorney and disqualification will impose a significant hardship on Doe. She therefore argues that the deposition must be quashed.

The matter of attorney disqualification is within the sound discretion of the court. See Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir. 1991). The party moving to disqualify opposing counsel bears the burden of proving disqualification is an appropriate remedy. Gifford v. Target Corp., 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010). When considering motions to disqualify, courts must balance public policy concerns and the court's responsibility to uphold the integrity of judicial proceedings with a party's right to select his or her own counsel. In determining whether to disqualify counsel, a court balances the interests and motivations of the attorneys, the clients, and the public. Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 592 (D.Minn.1986). Factors

considered include a court's "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings," (In re Potash Antitrust Litig., No. CIV. 3-93-197, 1993 WL 543013, at *16 (D. Minn. Dec. 8, 1993); a party's "interest in a trial free from even the risk that confidential information has been unfairly used against it," (Arnold v. Cargill Inc., No. 01-2086 (DWF/AJB), 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004); the "important public right" of a party to select its own counsel, (Macheca Transport Co. v. Philadelphia Indemnity Insurance Co., 463 F.3d 827, 833 (8th Cir.2006). Gifford, 723 F. Supp. 2d at 1117-8); and the relevant rules of professional conduct, although such rules are not controlling. See F.D.I.C. v. U.S. Fire Ins., Co., 50 F.3d 1304, 1314 (5th Cir. 1995).

The court will strictly scrutinize any motion to disqualify a party's chosen counsel due to the potential for abuse, with pretrial disqualification of counsel especially disfavored. Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007). As explained in Droste, the lawyer-witness ethical rules do not apply to pretrial preparation. At that stage of the case, the court must consider whether disqualification at the pretrial stage is necessary and whether it will impose a substantial hardship upon the plaintiffs.

Given the legal backdrop explained above, permitting Defendant to take a pretrial deposition of Doe's counsel will not necessitate disqualification, and there is no evidence before me that taking the deposition of Doe's counsel will create a risk that counsel will be disqualified for trial purposes. Particularly where it appears any need for a deposition could be side-stepped by a stipulation of facts, the court will not quash a properly noticed deposition of Doe's counsel based on an unsupported possibility of attorney disqualification.

2.      Attorney-Client Privilege and Work Product Doctrine.

Doe's counsel argues that her pre-filing communications with CSC began after it became evident that DOE would have to file this lawsuit. (Filing No. 92, at CM/ECF p. 4). She claims her pre-filing communications with her client are privileged and protected from disclosure by the work product doctrine.

Privileges in federal-question cases are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501; In re Bieter Co., 16 F.3d 929, 935 (8th Cir.1994). The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). It protects communications made in confidence by a client to an attorney, acting as an attorney, for the purpose of obtaining legal advice. Fisher v. United States, 425 U.S. 391, 403 (1976).

The work-product doctrine was recognized in Hickman v. Taylor, 329 U.S. 495 (1947). The doctrine reflects the practical reality that proper preparation of a client's case demands that a lawyer assemble information, sift through it to separate the relevant from the irrelevant facts, prepare legal theories and plan strategy without undue and needless interference. Id. at 393. The Court has therefore recognized a qualified privilege for certain materials prepared by an attorney "acting for his client in anticipation of litigation." Id. at 508, 67 S.Ct. 385. The work product doctrine is intended to guard against divulging the attorney's strategies and legal impressions. It does not preclude inquiry into the mere fact of investigation, and it does not preclude discovery of the facts. Carlson v. Freightliner LLC, 226 F.R.D. 343, 366 (D. Neb. 2004), (citing Resolution Trust Corp. v. Dabney, 73 F.3d 262 (10th Cir.1995)). As with documents and

communications protected by the attorney-client privilege, the work product doctrine provides no valid reason for refusing to respond to discovery seeking disclosure of nonprivileged facts. Carlson v. Freightliner LLC, 226 F.R.D. at 366, (citing Phillips Electronics North America Corp. v. Universal Electronics, Inc., 892 F.Supp. 108 (D.C.Del.1995)).

As Defendant correctly states, the communications between Doe's counsel and Defendant are not between counsel and her own client, and they are not protected under the attorney-client privilege. (Filing No. 96, at CM/ECF p. 18). Defendant further represents that it "does not intend to question Chaloupka about privileged conversations she had with Doe. Contrary to Doe's surmising, the NSCS also 'does not intend to ask Chaloupka *why*'" she did not communicate further with Defendant between November 16, and December 16, 2018. (Filing No. 96, at CM/ECF p. 18-19) (emphasis in original). But Defendant argues it "is entitled to know what 'context' Chaloupka ascribes to her communications with [Defendant], at least to the extent she intends to use that alleged context at trial to support Doe's allegation that the NSCS was deliberately indifferent or to rebut inferences regarding those communications that the NSCS would be entitled to argue at trial." (Filing No. 96, at CM/ECF p. 19).

The court agrees, and notes the discovery rules anticipate that a deponent, including counsel for a party, may possess both privileged and nonprivileged information and may object to questions on the basis of privilege and refuse to answer such questions. See Fed. R. Civ. P. 30(c). If the deposing party believes the objections were improper, it may certify the questions and objections and present the deposition transcript as supporting evidence on a motion to compel. Then the court will decide if privilege objections were properly invoked on a question-by-question basis. Simply stated. the court cannot rule on attorney-

client or work product objections in the abstract, and the fact that such objections may be raised during a deposition does not support an anticipatory ruling to quash a deposition.

Doe's counsel possesses first-hand knowledge of Doe's communications with Defendant during Doe's last month attending school at CSC. The court will not quash the deposition of Doe's counsel merely because she believes Defendant may pose questions requesting disclosure of information protected under the attorney-client privilege or work product doctrine.

3.    Relevance.

Doe claims Defendant violated her Title IX rights during the four-week period when all of CSC's communications with Doe were made by and through Doe's counsel. Defendant argues:

> Doe claims that the College had actual knowledge of, but was deliberately indifferent to, harm she suffered during that four week period when she encountered (or anticipated encountering) a student on-campus who had previously admitted to sexually assaulting her (as that term is defined under the NSCS's relevant policies). Chaloupka's knowledge of her communications with the NSCS on Doe's behalf about the encounters (or near encounters) that Doe claims created a hostile educational environment for her under Title IX is therefore critical to the NSCS's defense of this matter. Chaloupka's knowledge about her communications with the NSCS on Doe's behalf about the College's other acts or omissions during that four week period is likewise critical to the NSCS's defense. The NSCS therefore seeks to depose Chaloupka about that knowledge—knowledge that is relevant, non-privileged, unobtainable from another source, and (again) crucial to the NSCS's defense.

([Filing No. 96, at CM/ECF p. 1-2](#)).

Doe asserts her counsel's testimony is not relevant, much less crucial. Doe's counsel argues:

> While the undersigned does not dispute the authenticity of her own correspondence to and from Chadron State College/Board of Trustees employees, the undersigned does not agree that her communications, and what she did and did not say in those communications, are relevant to any of the claims and defenses presented in this case.

(Filing No. 92, at CM/ECF p. 4). The court disagrees.

The gravamen of Plaintiff's complaint is that CSC failed to sufficiently discipline Ige, leaving Doe at risk of encountering him on campus. Doe's complaint states she voiced her ongoing concerns, including concerns about access to on-campus counseling and classes, but to her knowledge, Ige was never expelled. Doe was advised of the discipline Ige received on October 25, 2016, and she graduated on December 16, 2016. (Filing No. 1, at CM/ECF p. 5, ¶ 22). For the last month of that seven-week period, as directed in counsel's letter, Doe's counsel served as Doe's spokesperson with CSC. And during that month, Doe alleges her injuries from Ige's actual or possible presence on campus were ongoing. She claims she was unable to attend on-campus counseling for fear of seeing her assailant, and she missed an examination because she did see him. The complaint alleges Doe personally objected to the alleged lenient discipline imposed on Ige, and she asked for options to complete her education while avoiding any encounters with Ige. But based on the evidence of record, Doe ultimately decided those options were insufficient. She rejected online study and a security escort—as stated in paragraphs 30, 32, and 33 of the complaint—through her counsel's written communications, not personally. As stated in the complaint, Doe "expressed to CSC her concerns and her

disappointment with CSC's refusal to ban Ige from campus. . . multiple times, in writing and eventually through the assistance of counsel. Doe claims Defendant was thereby deliberately indifferent to Doe's needs and educational rights.

Doe's counsel became personally involved in the underlying merits of this case when, at her request, she became Doe's sole contact with CSC regarding events occurring while Doe was still attending college. From November 16 until December 16, 2016, all communications about the merits of this case were exchanged, if at all, between CSC and Doe's counsel. The communications between Doe's counsel and CSC provide the basis for paragraphs 30, 32, and 33 of the complaint (as well as other paragraphs). If those paragraphs within the complaint are relevant, then the first-hand knowledge of Doe's counsel regarding those allegations is also relevant. And if CSC's failure to respond to Doe's ongoing problems on campus is relevant, then so is the content and scope of any notice Doe provided, directly or through her attorney, to CSC about any ongoing problems, along with CSC's response to those complaints. Under such circumstances, the court is convinced the first-hand knowledge possessed by Doe's counsel is very relevant to the claims alleged against CSC and CSC's defense to those claims.

4.      Necessary and Crucial.

Doe's counsel states her testimony is not "crucial;" that others could provide the same information. The court agrees that as to providing foundation for the written communications CSC received from Doe's counsel, counsel is not a crucial witness. (Filing No. 93, at CM/ECF p. 19). Defendant's witnesses can lay foundation for these documents.

However, Doe's counsel will not stipulate that she acted as Doe's agent in communicating with CSC beginning on November 16, 2016, ([Filing No. 94-1, at CM/ECF p. 12](#), ¶ 1), or that the documents referenced in the stipulation "constitute the only communications between Ms. Chaloupka and Chadron State College from Nov 16, 2016 to the date of Doe's graduation." ([Filing No. 94-1, at CM/ECF p. 13](#), ¶9). Doe claims she is not a necessary witness as to the scope of communications because CSC could call witnesses to confirm they received no additional communications from Doe's counsel. But considered from the perspective of an educational institution with multiple departments, calling every possible witness to prove no one at CSC received any further complaints or communications from Doe's counsel is an impractical if not impossible task. Consistent with the Federal Rules of Civil Procedure, the court will not foist that responsibility on Defendant when Doe's counsel is a fact witness, agrees there were no further communications between herself and CSC, but nonetheless refuses to stipulate as such.

Doe's counsel argues the stipulation is insufficient: A signed stipulation will unduly limit Plaintiff's ability to explain the context of her communications with CSC.[2] But if there is more to say—if the context of the information within the stipulation must be explained—then Doe can call witnesses (including Doe or CSC employees) to do that. And if Doe's counsel is the only person who can adequately explain the context of the November through December 2016 communications with CSC as reflected in the stipulation, and if that context is material and must be heard by a jury for fair consideration of Doe's case, then

_____

[2] Any claim that Defendant will unduly prejudice Doe by waving "Jane Doe's own lawyer's testimony" in front of a jury can be raised and resolved by motion in limine or by objection at trial.

Doe's counsel is a necessary and "crucial" trial witness, and Defendant is entitled to obtain her pre-trial deposition to prepare for trial.

Doe's counsel asked Defendant to convert the stipulation to requests for admissions, stating she would provide expedited answers to those requests. The court will rarely order a party to use a specific method to collect its evidence. More importantly, Defendant's proposed stipulation and requests for admissions as to the facts within that stipulation would accomplish the same thing, except that Plaintiff's responses to requests for admissions could include an explanation for the written communications, or lack thereof, with CSC in November and December of 2016. However, if that explanation is material to the case and can be provided only by Doe's counsel, then Defendant may be entitled to cross-examine Doe's counsel at trial. If Doe's counsel is not the only witness who can explain the admissions, then Plaintiff can call a witness at trial to provide that explanation. Under either circumstance, nothing is accomplished by requiring Defendant to re-draft the stipulation as requests for admissions in order to prove the full scope and content of communications between Doe and CSC from November 16 through December 16, 2016.

CONCLUSION

If Doe will not sign the stipulation, then the testimony of Doe's counsel regarding the extent and content of all communications she made on Doe's behalf between November 16, 2016 and December 16, 2016 is not only relevant, but crucial. If the context of the statements within the stipulation is material and necessary for a fair resolution of this case, and only Doe's counsel can provide that information, Doe's counsel is a crucial material witness. As to that context, only Doe's counsel currently knows what that testimony would be—and

Defendant is entitled to depose Doe's counsel prior to trial so it can prepare its response to that testimony at trial. But if Doe signs the stipulation, leaving herself or others who are not trial counsel to explain the context, then the testimony of Doe's counsel is not crucial: that is, the stipulation can be read or received at trial, or both, and the trial will proceed without Doe's counsel serving as a witness.

In the end, the question of whether the testimony of Doe's counsel is crucial, and therefore whether she must submit to a deposition, is up to Doe. But on the facts currently before the court, she has refused to sign the stipulation that could moot that problem.

Accordingly,

IT IS ORDERED that Plaintiff's motion to quash, for protective order, and for recovery of attorney fees, (Filing No. 92), is denied.

December 31, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge