IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | 8:17CV265 |
| vs. | |
| BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska; | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the defendant's motion for summary judgment, Filing No. 112. This case arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"). The plaintiff alleges hostile environment gender discrimination by defendant Board of Trustees of Chadron State College (hereinafter "the College") in connection with its response to reports of on-campus rapes of plaintiff Jane Doe by a fellow student.

The College argues that the undisputed evidence shows as a matter of law that it was not deliberately indifferent to the plaintiff's Title IX rights. It argues that in response to Doe's report that she had been raped, it immediately investigated Doe's allegations, implemented interim remedial measures, imposed disciplinary action against the student who assaulted Doe, and offered to accommodate her remainder of her last semester at the College. It contends that Doe failed to take advantage the College's proposed accommodations and did not communicate that she had any additional needs or concerns prior to her graduation. It argues that Doe's claim fails to meet the high standards for liability under Title IX and summary judgment is

1

appropriate. The plaintiff responds that there are genuine issues of material fact for determination by a jury. She contends the evidence shows the College's response to the reported incidents the was inadequate and unreasonable.

I. FACTS

Evidence in the record shows that the plaintiff reported a May 2016 nonconsensual sexual encounter with fellow student Anthony Ige to Robin Bila, a licensed mental health practitioner who provided services to students at the College, in the summer of 2016. Filing No. 113, Defendant's Brief, Index of Evid. at 2, ¶ 5; Filing No. 115-7, Defendant's Index of Evid., Ex. 8, Deposition of Robin Bila ("Bila Dep.") at 6-7, 13-14; Filing No. 124-6, Plaintiff's Index of Evid., Ex. 6, Bila Dep. at 60. Though she lived off campus, the plaintiff worked at the front desk on the first floor of Andrews Residence Hall. Filing No. 116-1, Defendant's Index of Evid., Ex. 4, Deposition of Jane Doe, ("Doe Dep.") at 135. Uncontroverted evidence shows that on September 19, 2016, Doe reported to her counselor, and later to Chadron Community Hospital personnel and to the police, that Ige again sexually assaulted her, first in the stairwell of Andrews Hall, and then in the basement bathroom of the building. *Id.* at 138-39, 141. Chief Lordino of the Chadron Police Department thereafter called Title IX Coordinator Anne DeMersseman and informed her of the alleged sexual assault. Filing No. 115-4, Ex. 5, Deposition of Anne DeMersseman ("DeMersseman Dep.") at 95-96.

DeMersseman then conducted an investigation—she interviewed Doe and Ige, viewed surveillance tapes, reviewed text messages, and spoke to law enforcement officers. *Id.* at 114. DeMersseman later prepared an investigative summary and determination. Filing No. 115-19, Defendant's Index of Evid., Ex. 26, Title IX

Investigation Determination. Ige admitted (1) that Doe never gave him verbal consent, and (2) that Doe said "stop" at least once during their sexual encounter. *Id.* at 2. DeMersseman concluded that Ige violated Board Policy 3020 and that "sexual acts occurred in both May and September that [Doe] did not consent to." *Id.* Board Policy 3020 addresses sexual assaults or violence. Filing No. 124-1, Plaintiff's Index of Evid., Ex. 1, DeMersseman Dep. at 34-35, Dep. Ex. 8.

> Sexual violence and sexual harassment are prohibited by law and by Board policy and the Colleges will not tolerate sexual violence or sexual harassment in any form, including, but not limited to, sexual assault; acquaintance, date or stranger rape; non-consensual sexual intercourse; sexual cyber harassment or sexual bullying. The Colleges will take appropriate action to prevent, correct, and discipline harassing or violent behavior that is found to violate Board policies and principles of equal opportunity and access.

*Id.*

DeMersseman forwarded copies of her investigative summary and findings to the College's President and to Vice-President Jon Hanson, with the recommendation that disciplinary proceedings should be instituted against Anthony Ige. Filing No. 115-9, Defendant's Index of Evid., Ex. 10, Deposition of Jon Hanson ("Hanson Dep.") at 117. In connection with the disciplinary proceeding, Ige admitted to the violation. *Id.* at 141. Vice-President, Jon Hanson made the disciplinary decision. *Id.* Hanson admitted he had never expelled a student for a violation of Board Policy 3020. *Id.* at 158.

Ige was not suspended or expelled. *Id.* at 148. The sanctions imposed on Ige were:

> a. Indefinite continuation of the No-Contact Order between Ige and Doe, including the requirement that Ige immediately leave any location where Doe is present, and a ban from Brooks Hall;

3

> b. Weekly counseling sessions with the Chadron State College Counseling Office, with the need for counseling to be reevaluated each semester;
>
> c. Behavioral probation, where reports of any similar behavior resulting in immediate suspension and/or dismissal;
>
> d. Requirement that Ige read "The Macho Paradox: Why Some Men Hurt Women and How All Men Can Help," and keep a reading journal to review with his counselor and VP Hansen on or before December 1, 2016; and
>
> e. Successful completion of online courses regarding Consent and Alcohol Wise prior to November 4, 2016.

Filing No. 115-28, Ex. 35, Letter dated Oct. 24, 2016. The College's determination was forwarded to Doe and she responded that she did not feel safe on campus and did not believe that the school responded adequately. Filing No. 115-30, Ex. 37, E-mail Correspondence. Title IX Coordinator DeMersseman submits a declaration that in her opinion, Ige was emotionally immature and had "an insufficient understanding of consent," but she did not believe Ige posed a danger to the CSC community. Filing No. 115-43, Index of Evid., Ex. 51, DeMersseman Decl. at 4; Filing No. 113, Defendant's Brief at 17, Statement of Facts ¶ 86.

In opposition to the motion, the plaintiff has submitted close to one hundred exhibits, including complete transcripts of the depositions of crucial witnesses. Filing Nos. 122 & 124, Indices of Evid.; *see* Filing No. 124, Index of Evid., Exs. 1 to 10. Without an exhaustive discussion of the evidence, let it suffice to say that the plaintiff has submitted evidence that shows she was sexually assaulted on two occasions on campus by a fellow student at the College, once in May 2016, and once in September 2016. The second incident occurred at her workplace and within the scope of her employment at the College. She reported the first incident to her campus counselor. Despite crediting the plaintiff's account of the sexual assault, the counselor did not

4

encourage Doe to report it nor did the counselor report the incident. The College determined that she was credible.

The plaintiff has also presented evidence that the assailant admitted that Doe did not consent, and that the College's sanction on the assailant included six counseling sessions, a book assignment, completion of an online class on consent that was required of all incoming students, and staying away from the plaintiff's assigned workplace. There is also evidence that the college imposed "no contact" orders on both Ige and Doe, enrolled Doe in an online course (allegedly without her consent) so as to avoid encountering Ige, changed Doe's work assignment rather than impose restrictions on Ige, and directed Ige to obtain counseling at the same facility as Doe. Ige was placed on "behavioral probation," a status that is not defined in the College's policies and does not involve any reporting or supervision. Ige was allowed to freely move about on campus to any location other than the plaintiff's workplace.

There is also evidence that the sanctions on the assailant were determined without any assessment of the risk of future attacks by Ige, notwithstanding the fact that the College regarded him as having an insufficient understanding of the concept of consent. Moreover, the plaintiff submits expert testimony on the adequacy of the response and the effects of such a response on a victim.

II. LAW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and must identify those portions of the record

which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.*: *see Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Individuals whose Title IX rights have been violated have a private right of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979).

Sexual harassment and sexual abuse clearly constitute discrimination under Title IX. *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 75 (1992); *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281–82 (1998); *Roe v. St. Louis Univ.*, 746 F.3d 874, 881–82 (8th Cir. 2014). "[S]tudent-on-student sexual harassment, if sufficiently severe" can rise to the level of discrimination actionable under Title IX. *Davis as Next friend of La Shonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see also Roe*, 746 F.3d at 882 (stating "Educational institutions may be liable for deliberate indifference to known acts of harassment by one student against another").

To establish a claim under Title IX based on peer harassment, a plaintiff must show as a threshold matter, that the defendant is a title IX funding recipient. *Davis*, 526

6

U.S. at 650. "Where a plaintiff's Title IX claim is based on harassment, the school is liable in damages only where it is '(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003) (internal quotation marks omitted)). Additionally, the behavior must be serious enough "to have the systematic effect of denying the victim access to the educational opportunities or benefits provided by the school.'" *Id.* (quoting *Davis*, 526 U.S. at 650). "Whether gender-oriented conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships.'" *Davis*, 526 U.S. at 651 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Deliberate indifference requires an "official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. "[F]unding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. That standard is intended to afford flexibility to school administrators. *Roe*, 746 F.3d at 882. "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

Liability under Title IX cannot be imposed unless an appropriate person has actual knowledge of discrimination. *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 661 (8th Cir. 2001). Actual knowledge of discrimination within the meaning of a Title IX

7

peer harassment claim requires more than after-the-fact notice of a single instance in which the plaintiff experienced sexual assault. See *K.T. v. Culver-Stockton Coll.*, 865 F.3d at 1058. Actual knowledge may be established where the recipient has prior knowledge of (1) harassment previously committed by the same perpetrator and/or (2) previous reports of sexual harassment occurring on the same premises or actual knowledge that an assailant poses a substantial risk of sufficiently severe harm to students based on the assailant's previous known conduct. *Id.* An "appropriate person" is one "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *P.H. v. Sch. Dist.*, 265 F.3d at 661; *Gebser*, 524 U.S. at 290. Further, a plaintiff must show that the institution had substantial control over both the harasser and the context in which the known harassment occurs. *Roe*, 746 F.3d at 882 (quoting *Davis*, 526 U.S. at 645).

The injury in a Title IX action is the deprivation of an equal educational opportunity. *Farmer v. Kansas State Univ.,* 918 F.3d 1094, 1106 (10th Cir. 2019) (holding that once the plaintiff shows that the funding recipient was deliberately indifferent to their complaints of peer sexual harassment, the plaintiff can show the requisite harm caused by that deliberate indifference by alleging and proving that the college's inaction deprived her of the benefits of the education program); *see Davis*, 526 U.S. 650 (identifying injury as harassment that "can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"). The most obvious example of student-on-student sexual harassment capable of triggering a damages claim involves the overt, physical deprivation of access to school resources. *Davis,* 526 U.S. at 650. "It is not necessary, however, to show physical exclusion to

demonstrate that a student has been deprived of an educational opportunity by the actions of another student." *Id*. at 651. Rather, the harassment must have a "concrete, negative effect" on the victim's education or access to school-related resources. *Id*. at 654. Where a university's failure to timely respond or take precautions to prevent further sexual assaults causes a student to withdraw from the school, the alleged discrimination "effectively bars [her] access to an educational opportunity or benefit," namely pursuing an education at [the university]." *Williams*, 477 F.3d at 1297 (11th Cir. 2007).

III. DISCUSSION

The evidence, viewed in the light favorable to the plaintiff, shows that there are genuine issues of material fact on whether the College's response to the plaintiff's reports of rape on campus were deliberately indifferent to her Title IX rights. The Court has reviewed enough of the parties' voluminous submissions to discern that there are numerous disagreements between the parties. The plaintiff has presented facts sufficient to support a reasonable inference that the College's response to serious, admitted allegations of nonconsensual sexual activity was inadequate.

The defendant does not dispute that the conduct was gender based. There is no doubt that the College had actual knowledge of the two troubling incidents. College administrators were aware of the plaintiff's allegations of brutal, violent, nonconsensual incidents. The administrators accepted the Title IX compliance officer's finding of a sexual assault and the information was relayed to the highest levels of the College's administration.

The plaintiff has presented evidence sufficient to create a genuine issue of fact as to whether the College was deliberately indifferent to the reported incidents. In the context of the "constellation of surrounding circumstances, expectations, and relationships," a jury could reasonably find that the College's response to the reported harassment was clearly unreasonable. That context includes the fact that the perpetrator admits to nonconsensual sexual activity, counselors and administrators credited the plaintiff's testimony, the incidents occurred on campus property and involved a student who was only lightly disciplined. The assailant lived in a dormitory and was under the control of the College when the incidents occurred. In light of the known circumstances, a jury could reasonably conclude that the College's investigation of and response to sexual assaults occurring within its walls was inadequate.

The College's investigation of the serious, credible reports of sexual assault could be viewed as cursory. The admitted perpetrator was not suspended or expelled. Although the College asserts it was unaware that the assailant was violating its "no contact" order, college administrators could be viewed as willfully blind to that circumstance. College officials had actual notice of the incidents and a reasonable juror could find that the College understated or trivialized the seriousness of the conduct.

There is expert testimony as to the standard of care and the parameters of an appropriate response. On this record, the Court is unable to conclude that the College's response was adequate as a matter of law. The record shows that the college arguably turned a blind eye to nonconsensual sexual encounters. Given the information known to the College, there is evidence that would support a conclusion that the College's response to the situation was not reasonable. Viewed in the light favorable to the

plaintiff, a reasonable juror could conclude that the College responded with deliberate indifference to actual notice of campus rape.

IT IS ORDERED:

1. Defendants' motion for summary judgment (Filing No. 112) is denied.

2. The parties shall contact the chambers of Magistrate Judge Zwart within ten (10) days of the date of this order to reschedule the pretrial conference and trial.

Dated this 7th day of February, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge