IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska,<br><br>　　　　　　　　　Defendant. | Case No. 8:17-cv-265<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF FIRST MOTION IN LIMINE AND *DAUBERT* CHALLENGE** |

# I.
# INTRODUCTION

Plaintiff Jane Doe's ("Plaintiff") expert, Dr. Charol Shakeshaft, a professor of educational administration at Virginia Commonwealth University, has offered only two distinct categories of testimony in this matter—legal opinions and medical opinions. Both are inadmissible.

First, Dr. Shakeshaft has testified about what she contends are Title IX's legal requirements, and how, in her opinion, Chadron State College ("CSC") failed to meet those requirements. Her proposed testimony about Title IX would not only invade the province of the Court (by purporting to instruct jurors about the law), but would also clearly invade the province of the jury (by providing it with so-called "expert opinions" about the ultimate issues under dispute here). Dr. Shakeshaft's legal opinions are *exactly* the kind of expert testimony this Court recently excluded in *Roohbakhsh v. Board of Trustees of Nebraska State Colleges*, 2019 WL 5653448 (D. Neb. Oct. 31, 2019) (Bataillon, J.).

Second, Dr. Shakeshaft has testified about the emotional and psychological harm she believes the Plaintiff suffered as a result of the sexual assaults she experienced and CSC's response thereto. In fact, Dr. Shakeshaft went so far as to testify about the psychological harm *any* student would suffer following an inadequate Title IX investigation. Dr. Shakeshaft is not qualified to render these opinions. She is not a mental health expert, or a physician of any kind. She has never met the Plaintiff, much less examined her. These medical opinions are not grounded in science or expertise. Thus, Dr. Shakeshaft's medical opinions are not based on any specialized knowledge that the jurors do not, themselves, possess.

For the foregoing reasons, Defendant, Board of Trustees of the Nebraska State Colleges (the "NSCS"), respectfully asks this Court to exclude Dr. Shakeshaft's testimony from trial.[1]

## II.
## FACTUAL BACKGROUND

As set forth in this Court's summary judgment order, the Plaintiff alleges that while studying at CSC, fellow student Anthony Ige ("Ige") sexually assaulted her twice. Following the second assault, the Plaintiff reported Ige's action to CSC (the "Title IX complaint") and the City of Chadron Police Department. The Plaintiff claims that CSC's response to her Title IX complaint violated Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681, *et seq.* (Dkt. 135 at 1-2).

---

[1] This motion is timely filed. The Court originally set a deadline for *Daubert* motions, for September 17, 2018. The Court also set a deadline for expert disclosures, for July 16, 2018 (Plaintiff) and August 16, 2018 (Defendant). (Dkt. 22). Subsequently, the Court extended the expert disclosure deadline to September 24, 2018 (Plaintiff) and November 8, 2018 (Defendant), but did not set a new deadline for *Daubert* motions to accommodate extended expert report deadlines. (Dkt. 71). The NSCS therefore files the foregoing Motion approximately three months before its current trial setting of March 1, 2021.

Dr. Shakeshaft, as noted above, is a professor of educational administration, a position she has held for 38 years. (*Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 2). She has served as a Title IX hearing officer at Virginia Commonwealth University, and also has consulting experience. (*Id.*). Dr. Shakeshaft does not claim any expertise in the fields of medicine, psychology, psychiatry, or rape trauma.

### A. Dr. Shakeshaft's Legal Opinions and Conclusions

Dr. Shakeshaft's expert report begins with a recitation of her understanding of the facts of the case. (*Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 8-24). She then recounts, at length, her interpretation of the legal requirements of Title IX. For example, pages 26-32 of her report contain a list of bullet points setting forth Dr. Shakeshaft's understanding of federal guidance relating to Title IX. Dr. Shakeshaft then devotes four pages to a discussion of the Clery Act and the Campus Save Act, even though she later admitted that those laws are irrelevant to this lawsuit. (*Deposition of Shakeshaft*, Filing No. 122-1, 30:22-31:12) ("Actually, I don't think there's any relevance to the Clery Act . . . . Again, I don't see particular relevance [for the Campus Save Act].").

Finally, Dr. Shakeshaft outlines in her report all the ways she thinks CSC violated Title IX. The chart located on pages 38-43 of her report matches Dr. Shakeshaft's understanding of "Federal Law Requirement[s]" (on the left side) against "Chadron State College Actions" (on the right side), which includes a summary opinion from Dr. Shakeshaft about whether CSC's actions satisfied or violated Title IX. For example, Dr. Shakeshaft contends that in the event of a complaint, Title IX "requires a school to take steps to ensure equal access to its education programs and activities and protect

the complainant as necessary," and then opines that "[t]his requirement was not followed" by CSC. (*Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 41). She similarly submits that Title IX requires "[e]ffective remedial action," and that "[t]his did not occur for Jane Doe." (*Id.*). Dr. Shakeshaft also opines that CSC's written policies were "compliant with Title IX requirements." (*Id.* at 43).

To create the "Opinions" section at the end of her report, Dr. Shakeshaft "(1) review[ed] the information [she] received in this case . . . (2) formulate[d] findings regarding compliance with federal standards and (3) determine[d] compliance with applicable laws and policies." (*Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 46). She ultimately expresses her view that "[s]everal requirements for compliance to federal law were not followed" by CSC. (*Id.*).

At her deposition, Dr. Shakeshaft answered affirmatively when asked whether a "fair summary" of her proposed expert testimony was that she would "apply those [Title IX] requirements to the facts of this case as [she] reviewed them, and make a determination as to whether or not [CSC] had complied with the Act in this instance." (*Deposition of Shakeshaft*, Filing No. 122-1, 10:16-24). Dr. Shakeshaft likewise confirmed that she plans to testify that CSC "failed to comply with the requirements of Title IX," (*id.* at 11:1-3).

  **B.** **Dr. Shakeshaft's Medical Opinions and Conclusions**

Dr. Shakeshaft testified at her deposition about the emotional harm she thinks a college student may suffer when his or her college performs an inadequate Title IX investigation. She also testified about the specific emotional harms she believes the Plaintiff suffered as a result of CSC's alleged inaction. Dr. Shakeshaft has never met

the Plaintiff, has never examined the Plaintiff, and is not a doctor or mental health professional.

Dr. Shakeshaft testified that "failures in the investigative process" when responding to a Title IX complaint lead to a possible "impact" where the complainant "just [doesn't] trust anything." (*Id.* at 53:5-6). A college's inadequate response to a Title IX complaint, according to Dr. Shakeshaft, "ups [the complainant's] stress level," and also "just increases your lack of trust and increases your stress and trauma." (*Id.* at 53:20-21). Dr. Shakeshaft continued her analysis, saying, "[w]ell, if the victim feels that they're not being taken seriously or that the response is not going to make them safe, then it increases the stress and the trauma. . . . . There's a decision that's been made, and . . . the victim, who feels all alone anyway, is further made to feel isolated, and it increases the fear, it increases the stress, it increases the trauma . . . ." (*Id.* at 55:13-56:7).

Dr. Shakeshaft also testified about her thoughts on the Plaintiff's emotional state following her Title IX complaint, noting that she "wouldn't be surprised that" the Plaintiff "wouldn't trust" CSC. (*Id.* at 60:15-16); (*see also id.* at 58:8-10) ("Her life wasn't returned to normality, her life wasn't made whole, it was kept diminished."). Dr. Shakeshaft testified that "from May onward, [the Plaintiff] experienced heightened stress, fear, limited mobility, limited access to college resources, activities, entertainment, and reduced access to job possibilities." (*Id.* at 52:12-17). Again, Dr. Shakeshaft has never met the Plaintiff and is not a doctor. (*See Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 2) (Dr. Shakeshaft is not a medical

doctor); (*Deposition of Shakeshaft*, Filing No. 122-1, 12:24-13:1) (Dr. Shakeshaft never met the Plaintiff).

## III.
## ARGUMENT

Dr. Shakeshaft's legal and medical opinions are inadmissible.

### A. Standard of Review

"Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." Fed. R. Evid. 104. The trial judge is the gatekeeper for the admission of evidence, including expert testimony. *General Electric Co. et al. v. Joiner et ux.,* 522 U.S. 136, 148 (1997) (upholding District Court's exclusion of expert testimony as unreliable because studies upon which the experts relied were insufficient to support their conclusions). The trial court's decision will not be disturbed absent abuse of discretion. *Id.* at 146. "The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 589 (1993).

### B. Dr. Shakeshaft's Legal Opinions and Conclusions are Inadmissible

Dr. Shakeshaft's opinions about Title IX's legal requirements, and her legal conclusion that CSC failed to satisfy those purported requirements, are inadmissible because they invade the province of the Court to explain what the law is and usurp the role of the jury in determining whether Title IX has been violated. In *Roohbakhsh*, this Court excluded *exactly* the same kind of expert testimony Dr. Shakeshaft plans to offer at trial.

*Roohbakhsh* was a Title IX case in which the plaintiff, the estate of a deceased college student, challenged the NSCS's handling of a Title IX investigation. *See*

*Roohbakhsh*, 2019 WL 5653448, at *1-2. The plaintiff wanted to introduce expert testimony from Saundra K. Schuster "regarding the standard of care for educational institutions, Chadron State's policies and procedures relevant to Title IX, and its response to the dating violence allegedly experienced by [the deceased student]." *Id.* at *3.

This Court excluded significant portions of Ms. Schuster's expert testimony. The Court observed that "[a]n expert cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony. Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *Id.* at *2 (quoting *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)). Likewise, the Court recognized that "an expert cannot offer an opinion that the defendant violated a statute." *Id.* (citing, *inter alia*, *Portz v. St. Cloud State Univ.*, 297 F.Supp.3d 929, 952 (D. Minn. 2018) (excluding expert's testimony "about the legal requirements of Title IX or about [the expert's] conclusions as to whether [defendant] complies with Title IX")).

Applying these well-established principles, this Court determined "that Shuster's opinions on whether Chadron State's conduct amounted to deliberate indifference is a question for the jury to determine and must be excluded. The parameters of deliberate indifference is a question of law and a matter for instruction by the Court." *Id.* at *3.[2] The Court likewise held: "Whether the College was 'deliberately indifferent' to the risk of harm to [the deceased student] is beyond the proper role of an expert witness and

---

[2] The Court permitted Ms. Schuster to testify about "industry standards for Title IX training, compliance, investigations, and responses, as well as about the history and purposes of Title IX." *Id.* at *4. Dr. Shakeshaft did not address industry standards in her report or at her deposition. Rather, Dr. Shakeshaft opined exclusively about Title IX's purported requirements and CSC's purported failure to satisfy them.

7

would supplant the jury's role in evaluating and determining the facts." *Id*. *Roohbakhsh* is well in line with other authority from within the Eighth Circuit. *See, e.g.*, *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (excluding testimony addressing the ultimate issue of whether a product was unreasonable dangerous); *United States v. Klaphake*, 64 F.3d 435, 439 (8th Cir. 1995) (prohibiting an attorney from testifying regarding legality of business trust arrangement); *Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) ("Explaining the law is the judge's job."); *Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) (holding that "we have no doubt that the district court acted properly in ruling that Farmland's expert witness could not testify regarding the requirements of law").

Dr. Shakeshaft also confirmed that one of her "primary conclusions in the case" was that the Plaintiff was denied "educational opportunities" as a result of CSC's actions. (*Deposition of Shakeshaft*, Filing No. 122-1, 15:22-16:3). This, as well, is one of the ultimate determinations the jury will have to reach when it renders its verdict. *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1056 (8th Cir. 2017) (Title IX liability depends on finding that the college's "deliberate indifference to known acts of peer harassment denied the victim access to educational opportunities").

Just as in *Roohbakhsh*, Dr. Shakeshaft's proposed testimony about what she views as the requirements Title IX imposes on CSC, and her opinion that CSC failed to satisfy those requirements or otherwise deprived the Plaintiff of equal access to educational opportunities, are inadmissible.

8

Finally, Dr. Shakeshaft asserts that CSC failed to comply with federal guidance documents issued by the U.S. Department of Education. (*See Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 40) (opining that CSC did not comply with the Department's recommendations set out in a "Questions and Answers" document). This testimony should be excluded as irrelevant, because an alleged failure to comply with federal regulations cannot show deliberate indifference. As the Supreme Court recognized, an "alleged failure to comply with the [Title IX] regulations" does not establish deliberate indifference, because the Court has never held that "the implied private right of action under Title IX allows recovery in damages for violation of [such] administrative requirements." *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 291–92 (1998); *see also Sanches v. Carollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169–70 (5th Cir. 2011) (accord); *Doe v. Bd. of Educ. of Prince George's Cty.*, 605 F. App'x 159, 168 (4th Cir. 2015) ("[P]rocedural shortcomings do not diminish the substantive impact of all the steps [the defendants] took in response to [the victim's] allegations.") (internal citation omitted).

Consequently, Dr. Shakeshaft's opinions about Title IX's legal or administrative requirements and whether CSC failed to satisfy those purported requirements should be excluded at trial.

### C. Dr. Shakeshaft's Medical Opinions are Inadmissible

Dr. Shakeshaft is not qualified to offer medical opinions about how CSC's response to the Plaintiff's Title IX complaint affected her, much less how other Title IX investigations impact other, generic, unnamed students.

9

Dr. Shakeshaft has no background in psychology or psychiatry. She is a professor of education administration, who holds a Ph.D. in that field. (*Shakeshaft 2.17.2019 Expert Report*, Filing No. 122-56 at 2). Dr. Shakeshaft teaches courses in dissertation advisement, capstone research, and research methods. (*Deposition of Shakeshaft*, Filing No. 122-1, 26:22-25). She has taught an undergraduate course in feminist theory. (*Id.* at 27:13-16). Nothing in Dr. Shakeshaft's professional background qualifies her to render medical opinions about the psychological impact of a Title IX investigation on anyone.

To pass muster under Federal Rule of Evidence 702, an expert witness "must be 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Wildman v. Am. Century Servs., LLC*, 4:16-CV-00737-DGK, 2018 WL 2326628, *1 (W.D. Mo. May 22, 2018) (quoting Fed. R. Evid. 702); *accord Lemberger v. Union Pac. R.R. Co.*, 463 F.Supp.2d 954, 962 (D. Neb. 2020) (Bataillon, J.) (noting that "the proposed [expert] witness must be qualified to assist the finder of fact"). An expert witness can be qualified by virtue of her "knowledge, skill, experience, training, or education." *Daubert*, 509 U.S. at 589.

In *In re Mirapex Products Liability Litigation*, 10-5009 (MJD/FLN), 2013 WL 1703476 (D. Minn. Feb. 14, 2013), the court held that the plaintiff's "treating neurologist" was "not qualified to offer expert opinion on [plaintiff's] state of mind at the time his claim accrued," because the neurologist "is not a psychiatrist." *Id.* at *3. Likewise, in *Ivor v. McCarthy*, 4:18-cv-4104, 2020 WL 1159389 (W.D. Ark. Mar. 10, 2020), the court excluded a proposed expert's testimony "as to Plaintiff's mental state or alleged mental anguish damages," because this expert "is not a psychiatrist or licensed counselor and,

10

to the Court's knowledge, does not hold any other credentials that would qualify him to opine on the cause of Plaintiff's alleged mental and emotional distress." *Id.* at *1; *see also Day v. Cty. of Contra Costa*, 2008 WL 4858472, *22 (N.D. Cal. Nov. 10, 2008) (proposed expert "is not a psychiatrist, and is not qualified to testify as to whether Deputy Patzer's fear was rational or not").

Like the alleged experts in *In re Mirapex*, *Ivor*, and *Day*, Dr. Shakeshaft is unqualified to opine about the emotional effect a Title IX investigation can generally have on students, much less to opine about the emotional effect CSC's Title IX investigation had on the Plaintiff specifically. Dr. Shakeshaft is neither a psychiatrist, a psychologist, nor any other kind of mental health professional. Notably, Dr. Shakeshaft never even interviewed the Plaintiff. (*Deposition of Shakeshaft*, Filing No. 122-1, 12:24-13:1). She likewise has not interviewed Ige, or anyone affiliated with CSC. (*Id.* at 13:5-15).

In addition to the foregoing, there is a completely separate reason the Court should exclude Dr. Shakeshaft's medical opinions: Dr. Shakeshaft's expert report does not include any analysis of the emotional or psychological impact CSC's Title IX investigation had on the Plaintiff. Under Federal Rule of Civil Procedure 26(a)(2)(B)(i), an expert report "must contain: a complete statement of all opinions the witness will express and the basis and reasons for them." Failing to disclose certain opinions in the expert report requires their exclusion from trial. *See, e.g.*, *Wegmann v. Ethicon, Inc.*, 2020 WL 5814475, *6 (E.D. Mo. Sept. 30, 2020) (excluding proposed testimony after holding that "an expert's testimony generally is limited to his or her report produced in accordance with Rule 26 (a)(2)(B), and to explanations that are reasonably necessary

to explain the opinions in his report"); *In re Prempro Products Liability Litig.*, 2007 WL 4688416, *1 (E.D. Ark. Jan. 23, 2007) (granting motion to exclude expert testimony that was "not included in his expert report"). The Court should not permit Dr. Shakeshaft to offer opinions at trial that she did include in her report.

### III.
### CONCLUSION

For the foregoing reasons, the NSCS respectfully requests that the Court grant this motion *in limine* and exclude Dr. Shakeshaft's proposed expert testimony from trial.

DATED this 11th day of December, 2020.

                                        BOARD OF TRUSTEES OF THE
                                      NEBRASKA STATE COLLEGES, Defendant,

BY:   /s/George E. Martin III
        George E. Martin III (NE #21747)
        Leigh Campbell Joyce (NE #26218)
        Baird Holm LLP
        1700 Farnam Street, Suite 1500
        Omaha, NE 68102
        Phone: 402-344-0500
        Facsimile: 402-344-0588
        Email: gmartin@bairdholm.com
                 lcampbell@bairdholm.com

        Thomas E. Johnson (NE#12089)
        Johnson Tabor & Johnson Law, LLC
        11932 Arbor St., Suite 101
        Omaha, NE 68144
        Phone: 402-506-4444
        Facsimile: 402-506-4442
        Email: tjohnson@johnsontabor.com
        ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on December 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

      Maren Lynn Chaloupka
      mlc@chhsclaw.net

      /s/ George E. Martin III

DOCS/2555222.7