IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>                          Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska,<br><br>                         Defendant. | Case No. 8:17-cv-265<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, RECONSIDERATION OF SUMMARY JUDGMENT DECISION** |

## I.
## INTRODUCTION

Plaintiff Jane Doe (the "Plaintiff" or "Doe") alleges that she suffered emotional trauma as a result of Chadron State College's (the "College") inadequate response to her report that a fellow student, Anthony Ige ("Ige"), sexually assaulted her. She bases her Title IX claim entirely upon that alleged emotional trauma. Nowhere in her Complaint does she allege that, as a result of the NSCS's alleged deliberate indifference to her reported sexual harassment, she experienced any subsequent sex harassment. The Eighth Circuit recently held that a Title IX plaintiff must suffer a subsequent instance of sexual harassment as a result of a college's deliberate indifference, and that emotional trauma alone, even if proven, "is not enough" to maintain a Title IX cause of action. *Shank v. Carleton College*, 993 F.3d 567 (8th Cir. 2021). Accordingly, Defendant Board of Trustees of the Nebraska State Colleges' ("NSCS") is entitled to judgment on the pleadings.

Alternatively, the NSCS requests that the Court reconsider its decision denying the NSCS's Motion for Summary Judgment, wherein the NSCS argued, among other

things, that "Doe's dissatisfaction with the outcome of her Title IX complaint is insufficient to state a claim under Title IX." (Dkt. 113 at 32). That dissatisfaction, standing alone, is insufficient to state a claim under Title IX because the undisputed facts show that the Plaintiff did not suffer any sexual harassment as a result of the NSCS's allegedly inadequate response to her Title IX complaint.

## II.
## BACKGROUND

**A.    Allegations in the Plaintiff's Complaint**

Taking as true the allegations in the Plaintiff's complaint, she alleges that she was an international student at the College from August 2013 to December 2016, when she graduated. (Dkt. 1, Complaint at ¶¶ 2, 10). As a student, the Plaintiff worked an on-campus job as a security officer assigned to the College's Andrews Hall complex. (*Id.* at ¶ 11). In May 2016, Ige sexually assaulted the Plaintiff while she was at work, though she did not initially report this assault to the College. (*Id.* at ¶ 15). Then, in the early morning hours of September 19, 2016, Ige sexually assaulted the Plaintiff a second time, also while she was at work. (*Id.* at ¶ 13).

The Plaintiff reported the second assault to her counselor, and underwent a rape kit examination at the Chadron Community Hospital. (*Id.* at ¶ 14). She reported the assault to law enforcement, after which the College learned of it. (*Id.*). On September 22, 2016, the Plaintiff spoke to Anne DeMersseman ("DeMersemman"), the College's Title IX coordinator, and reported both of Ige's sexual assaults. (*Id.* at ¶ 15). DeMersseman next interviewed Ige, who did not claim to have received affirmative or verbal consent from the Plaintiff before engaging in sexual activity, and who admitted that the Plaintiff told him to stop having sex with her once. (*Id.* at ¶ 16). Ige also

2

admitted that the Plaintiff ran away from him at one point, and that he pursued her into a bathroom. (*Id.*).

DeMersseman concluded that the Plaintiff had not consented to the sexual acts that occurred in both May and September 2016. (*Id.* at ¶ 17). She informed the Plaintiff of this determination, and also told her that she had requested a "no contact – no retaliation order" that would permanently restrict Ige from Andrews Hall. (*Id.*). DeMersseman also told the Plaintiff that she would move Ige to a different housing complex. (*Id.*). The College did ban Ige from Andrews Hall, but did not move him to a different dormitory. (*Id.* at ¶ 19). The College also did not ban Ige from other dormitories in the larger complex that included Andrews Hall. (*Id.*).

The Plaintiff suffered anxiety and panic attacks because she feared encountering Ige when she worked at Andrews Hall. (*Id.* at ¶ 20). She therefore requested that her security assignment be moved to Brooks Hall, and this resulted in fewer hours. (*Id.* at ¶ 21).

On October 25, 2016, the College imposed the following punishments on Ige:

- Indefinite continuation of the no-contact order;
- A ban from Brooks Hall;
- Weekly counseling at the College's Counseling Office;
- Behavioral probation;
- Reading a book titled "The Macho Paradox: Why Some Men Hurt Women and How All Men Can Help," and providing a journal of his thoughts; and
- Completion of an online alcohol course.

(*Id.* at ¶ 22).

The Plaintiff does not allege that Ige harassed or assaulted her at any point after she reported him to the College. (*See, generally,* Dkt. 1). Nonetheless, she claims that because Ige was not expelled, she experienced anxiety about the possibility of encountering him on campus. (*Id.* at ¶ 25). She also stopped attending counseling, for fear of seeing Ige at the College's counseling center. (*Id.* at ¶¶ 26-28). The Plaintiff encountered Ige a single time in an academic building—he "made eye contact with her," but did not say or do anything that could be construed as sex harassment. (*Id.* at ¶ 29).

The College offered to provide the Plaintiff with a campus security escort, which she declined because she "did not want to be conspicuous." (*Id.* at ¶¶ 32-33). The Plaintiff completed her coursework and graduated, and continues to live in Chadron, Nebraska. (*Id.* at ¶¶ 39-43).[1]

**B.   Facts on Summary Judgment**

There is no dispute whatsoever as to the fact that the Plaintiff has never alleged that she suffered sex harassment after she made her Title IX complaint to the College. The undisputed facts on summary judgment demonstrate that Ige did not sexually harass the Plaintiff after she reported his earlier assaults. Drawing from the facts alleged in the Plaintiff's Opposition Brief, the Plaintiff is an immigrant from Mali who suffered serious sexual abuse as a child. (Dkt. 120 at 25-27). After coming of age, she became interested in attending the College, applied and was accepted. (*Id.* at 31). She moved to the United States and enrolled at the College. (*Id.*).

After the Plaintiff became a student, Ige sexually assaulted her two times. The first assault occurred in May 2016, when Ige raped the Plaintiff, allegedly after luring her

---

[1] The Plaintiff moved from Chadron at some point after filing the Complaint.

to his dorm room. (*Id.* at 40-41). The Plaintiff did not initially report this assault to the College, confiding only in her therapist at the College's counseling center. (*Id.* at 42-43). Ige assaulted the Plaintiff a second time on September 19, 2016, while the Plaintiff worked as a campus security officer. (*Id.* at 46-47).

The Plaintiff went to the hospital after the second assault, where she spoke with police officers and her counselor. (*Id.* at 50-51). The police chief informed the College's Title IX coordinator, DeMersseman, about the assault, and DeMersseman opened a Title IX investigation. (*Id.* at 51). In a September 22, 2016 interview with DeMersseman, the Plaintiff divulged both the May and September 2016 sexual assaults. (*Id.* at 55-57).

The College responded by issuing a no-contact order to Ige and banning him from Andrews Hall, the dormitory where the Plaintiff worked. (*Id.* at 69). The College then moved the Plaintiff's work assignment to a new dormitory, Brooks Hall, and banned Ige from Brooks Hall. (*Id.* at 79. 82-83). Following her investigation, DeMersseman found Ige violated Board Policy 3020 when he committed each of the sexual assaults. (*Id.* at 78). Ige chose not to appeal this determination. (*Id.* at 90).

The College then imposed the following sanctions on Ige:

- Indefinite continuation of the no-contact order and Brooks Hall ban;
- A requirement that Ige immediately leave any event, function, gathering or location if the Plaintiff was also present;
- Behavioral probation;
- Weekly counseling sessions at the College's counseling office;
- Reading a book on sexual abuse and related journaling assignment; and

- Completion of an online Consent and Alcohol Wise course.

(*Id.* at 94-95).

The Plaintiff has never alleged that she was sexually harassed or assaulted by Ige after she reported the May and September 2016 incidents to the College. In fact, in her opposition brief to the NSCS's motions in limine, she explicitly concedes as much. (Dkt. 166 at 38) ("And yet Defendant is now trying to accomplish through its Sixth Motion in Limine what it could not accomplish on summary judgment, *e.g.*, secure a ruling that there was no discrimination simply because Ige raped DOE for the second time, he did not rape her a third time or sexually harass her again.") (emphasis supplied). Likewise, nowhere in her 161-page summary judgment opposition brief does the Plaintiff allege or even mention Ige sexually harassing her once she brought his problematic behavior to the College's attention. (*See, generally*, Dkt. 120). To the contrary, the bullet point list she provides on pages 151-154 of the brief, summarizing each instance of the College's alleged deliberate indifference, does not allege or even mention that she experienced any sexual harassment after the College responded to her Title IX complaint.

The Plaintiff instead predicates her Title IX claim on the emotional trauma she allegedly suffered because of what she believes was the College's inadequate response to her Title IX complaint. In particular, the Plaintiff focuses on the College's decision not to expel Ige or ban him from campus. (*Id.* at 119) ("Not only did [Vice President of Enrollment Management, Marketing & Student Services] Hansen not expel Ige, but he did not even ban Ige from campus and relegate Ige to online classes."). The Plaintiff claims that because of her fear of encountering Ige on campus, she began attending

classes less frequently, missing about 2/3 of her classes post-assault as opposed to 1/10 of her classes pre-assault. (Dkt. 120 at 92). The Plaintiff also stopped attending counseling sessions, (*id.* at 120), and experienced significant stress. (*Id.* at 129) (By November 2016, "Doe was wrung out, exhausted, and intermittently suicidal.").

**C.    Procedural Background**

The Plaintiff filed this lawsuit on July 21, 2017. (Dkt. 1). She brought claims for: (1) violation of Title IX, 20 U.S.C. §§ 1681, *et seq.*, and (2) race discrimination, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000d. The Plaintiff filed a motion for leave to amend her complaint on January 2, 2018, which the Court denied on February 9, 2018. (Dkt. 40). The Plaintiff voluntarily dismissed her race discrimination claim on January 15, 2019, which the Court granted on March 7, 2019. (Dkts. 102, 111).

The NSCS moved for summary judgment on March 15, 2019, arguing, in-part, that "Doe's dissatisfaction with the outcome of her Title IX complaint is insufficient to establish a claim under Title IX." (Dkt. 112 at 32). The NSCS argued that the College's response to the Plaintiff's report of Ige's sexual assaults had been reasonable. (Dkt. 113 at 28-30). The NSCS also argued that the measures it took to ensure the Plaintiff's safety, which included the no-contact order and offering the Plaintiff a security escort on campus, were both reasonable and kept the Plaintiff from experiencing further harassment from Ige. (*Id.* at 30). Thus, the College "had no knowledge or notice that Doe ever encountered Ige on campus thereafter until Doe filed suit," and her claim failed as a matter of law. (*Id.* at 34-35).

The Plaintiff disagreed. She argued on summary judgment that "there is no *one free rape* rule: a victim does not have to be raped twice before the school is required to

7

respond appropriately." (Dkt. 120 at 141) (emphasis in original). The Plaintiff relied heavily on *S.S. v. Alexander*, 143 Wash.App. 75 (Wash. Ct. App. 2008) in making this argument. That case held that there need not be a subsequent act of harassment for Title IX liability to attach. *Id.* at 110 ("S.S. did not have to be raped twice before the university was required to appropriately respond to her requests for remediation and assistance."). The Court sided with the Plaintiff, holding that fact issues precluded summary judgment. (Dkt. 135). It reached this conclusion, in part, by relying on a Tenth Circuit case, *Farmer v. Kansas State University*, 918 F.3d 1094 (10th Cir. 2019), which held that no post-report instance of sexual harassment need occur for a student to bring a Title IX claim. (Dkt. 135 at 8). As discussed at greater length below, neither *Farmer* nor *S.S.* can be reconciled with the Eighth Circuit's *Shank* decision.

### III.
### STANDARD

**A.     Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) authorizes motions for judgment on the pleadings, which are subject to "the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In other words, the court must "construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). If, after doing so, "the moving party is entitled to judgment as a matter of law," judgment must be entered in favor of that party. *Meyer Nat. Foods, LLC v. Liberty Mutual Fire Ins. Co.*, 218 F.Supp.3d 1034, 1036 (D. Neb. 2016).

**B.	Reconsideration**

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010). Thus, reconsideration "may be justified on the basis of an intervening change in the controlling law." *Reynolds v. Credit Mgmt. Servs., Inc.*, 8:14CV391, 2016 WL 1446449, *1 (D. Neb. Apr. 12, 2016); *see also* Miller & Wright, Federal Practice & Procedure, § 2810.1 (reconsideration "may be justified by an intervening change in controlling law"); *Ctr. For Family Medicine v. U.S.*, CIV. 05-4049-KES, 2009 WL 10722470, *2 (D.S.D. July 30, 2009) (same principle).

Federal Rule of Civil Procedure 60(b) authorizes motions for reconsideration of a court's prior order. "The Rule provides that a party may be relieved from an order of the Court under certain enumerated circumstances, including mistake, inadvertence, surprise, or excusable neglect." *Grove v. Meltech, Inc.*, 8:20CV193, 2021 WL 106267, *1 (D. Neb. Jan. 12, 2021) (Bataillon, J.). Rule 60(b) also authorizes reconsideration for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Reconsideration is an important tool to conserve judicial resources, enabling courts in appropriate circumstances to avoid unnecessary trials. *Ingram v. S.C.I. Camp Hill*, 448 Fed.Appx. 275, 278 (3d Cir. 2011) (unpublished) (Avoidance of "a potentially unnecessary trial [is] surely an adequate justification for reconsideration.").

# III.
# ARGUMENT

## A. Judgment on the Pleadings

Judgment on the pleadings is warranted, because controlling Eighth Circuit precedent prohibits Title IX plaintiffs from maintaining suit based on emotional trauma alone.

In *Shank*, the Eighth Circuit rejected a Title IX claim very similar to the Plaintiff's. *Shank* involved a college student who was sexually assaulted by two student athletes in a dorm room. 993 F.3d at 570. She did not immediately report the assaults, but the defendant college learned of them after the plaintiff was hospitalized. *Id.* The college began an investigation, and took corrective action which the *Shank* plaintiff found inadequate. For example, the college instituted a no-contact order, but the plaintiff nonetheless "frequently . . . saw [her assailants] around campus despite the no-contact order." *Id.* at 572. Likewise, the college failed to move as quickly as it could have to take down athletic posters featuring the plaintiff's assailants, and seeing these posters "caused [plaintiff] to experience symptoms of post-traumatic stress disorder and suicidal ideation." *Id.* at 570. And the college was responsible for a "delay in giving [plaintiff] the opportunity to promptly move to a new dorm," which was "a matter of some concern" given that the assailants lived in the same dorm. *Id.* at 575. As a result of the emotional distress this caused, the *Shank* plaintiff—like the Plaintiff here—alleged that she withdrew from campus activities. *See id.* at 572 (*Shank* plaintiff "avoided the dining halls" and "had difficulty attending classes because she feared seeing [her assailants]").

The Eighth Circuit nonetheless rejected the *Shank* plaintiff's Title IX claim, since she did not suffer a subsequent instance of sexual harassment after reporting the

10

sexual assaults. Specifically, the court held that "a Title IX plaintiff must demonstrate a 'causal nexus' between the college's conduct and the student's experience of sexual harassment." *Id.* at 576 (citing *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017)). Thus, "**[l]inking the college's actions or inactions to emotional trauma the plaintiff experienced in the wake of sexual harassment or assault, even if proven, is not enough**." *Id.* (emphasis added).

The *Shank* decision comes amid a circuit split on the question of whether subsequent harassment is needed to state a Title IX claim. In *Shank*, the Eighth Circuit sided with the Fifth, Sixth, and Eleventh Circuits in holding that Title IX requires subsequent harassment. *See I. L. Houston Independent School District*, 776 Fed. Appx. 839 (5th Cir. 2019) (unpublished); *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 621 (6th Cir. 2019) (noting "requirement that at least one more (*further*) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim") (emphasis in original); *Hill v. Cundiff*, 797 F.3d 948, 972 (11th Cir. 2015) ("A single instance of sufficiently severe one-on-one peer harassment cannot have such a systemic effect in light of the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.").

In the *Farmer* case this Court cited to in its summary judgment order, the Tenth Circuit reached the opposite conclusion, holding that a Title IX plaintiff need not "allege subsequent actual incidents of sexual harassment had occurred following the school's inadequate response." 918 F.3d at 1106. The *Shank* decision is directly contrary to *Farmer*, and under *Shank*, the Plaintiff's claim fails. *Shank* also renders the Plaintiff's

11

reliance on the *S.S.* case inapposite. As noted above, her claim is based entirely on the emotional trauma she claims to have suffered due to the College's response to her reports that Ige sexually assaulted her. The Plaintiff does not allege (and has never alleged) that Ige assaulted or harassed her at any point following her September 22, 2016, report to the College about him.

The Court should grant judgment on the pleadings, and dismiss the Plaintiff's complaint with prejudice. The Court should not grant leave to amend, because amendment would be futile. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("A district court may deny leave to amend if there are compelling reasons such as . . . futility of the amendment.").

**B.     Reconsideration**

In the alternative, the Court should grant reconsideration of its summary judgment decision in light of *Shank*. The facts developed in discovery establish that the Plaintiff did not suffer any post-report sexual harassment. The Plaintiff's opposition brief to the NSCS's summary judgment motion was 161 pages long, and does not contain any mention or reference to any subsequent harassment. (Dkt. 120). Instead, she argued that no subsequent harassment is necessary, because "a victim does not have to be raped twice before the school is required to respond appropriately." (*Id.* at 141). This theory is incompatible with *Shank*. The NSCS is entitled to reconsideration because an intervening change in Eighth Circuit case law renders the Plaintiff's Title IX claim non-viable.

## IV.
## CONCLUSION

There is no reason for this case to proceed to trial: published Eighth Circuit precedent forecloses the Plaintiff's Title IX claim. Accordingly, the NSCS respectfully requests that the Court grant this motion, dismiss the Plaintiff's complaint with prejudice, and enter judgment in its favor.

DATED this 7th day of May, 2021.

                                      BOARD OF TRUSTEES OF THE
                                      NEBRASKA STATE COLLEGES, Defendant,

                            BY:   /s/ George E. Martin III
                                      George E. Martin III (NE #21747)
                                      Leigh Campbell Joyce (NE #26218)
                                      Baird Holm LLP
                                      1700 Farnam Street, Suite 1500
                                      Omaha, NE  68102
                                      Phone:  402-344-0500

        Facsimile:  402-344-0588
        Email: gmartin@bairdholm.com
             lcampbell@bairdholm.com

        Thomas E. Johnson (NE#12089)
        Johnson Tabor & Johnson Law, LLC
        11932 Arbor St., Suite 101
        Omaha, NE 68144
        Phone: 402-506-4444
        Facsimile: 402-506-4442
        Email:  tjohnson@johnsontabor.com
        **ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

    Maren Lynn Chaloupka
    mlc@chaloupkalaw.net

                /s/George E. Martin III

DOCS/2630458.3