IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska;<br><br>    Defendant. | 8:17CV265<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on motions in limine filed by defendant Board of Trustees of Chadron State College (hereinafter "Chadron State" or "the College"), Filing Nos. 148, 150, 152, 154, 156, and 158, and on a motion for additional time for voir dire filed by the plaintiff, Filing No. 175. This is an action for hostile environment gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").

I.   BACKGROUND

The plaintiff alleges gender discrimination in connection with the College's response to reports of on-campus rapes. She alleges fellow student Anthony Ige raped her on two occasions.

The defendant first moves under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 581 (1993) to exclude the testimony of plaintiff's expert, Carol Shakeshaft, Ph.D. Filing No. 150. Dr. Shakeshaft has a Ph.D. in educational administration and has been a professor of educational administration for over thirty-eight years. Filing No. 167-1, Curriculum Vitae at 1. She is presently a professor in the Department of Educational

Leadership at Virginia Commonwealth University. *Id.* She began studying sexual abuse of students in schools in the 1980's. She now spends most of her time training school district administrators. She has performed research funded by federal grants and authored a report on educator sexual misconduct that was published by the United States Department of Education. She reviewed all of the depositions, exhibits, and the College's policies in preparation for her testimony in this case. Filing No. 167-2, Expert Report at 3-4. In her report, she provided general background on Title IX regulations and requirements, and testifies as to the College's compliance with those regulations. *Id.* at 14-33; Filing No. 167-3, Supplemental Expert Report at 46-47.

The College also seeks orders precluding testimony or argument concerning assailant Anthony Ige's subsequent misconduct, Ige's status as a student athlete or his holding himself out to be a student athlete, Doe's prior history of sexual assault, and feared encounters that did not occur. The defendant also moves to allow introduction of the parties' January 2019 Statement of Stipulated Facts ("Stipulation") as evidence at trial, and to prohibit plaintiff's counsel from making any statements during trial that provide "context" or an explanation of the stipulation.

II.  LAW

Although the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings, performing a gatekeeping function and sharpening the focus for later trial proceedings, some evidentiary submissions, cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment. *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine is appropriate for "evidentiary

2

submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* In other instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury. *Id.* The Eighth Circuit has noted that "[e]videntiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually happens at trial." *Walzer v. St. Joseph State Hosp.*, 231 F.3d 1108, 1113 (8th Cir. 2000). To the extent that a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve. *United States v. Beasley*, 102 F.3d 1440, 1451 (8th Cir. 1996).

Federal Rule of Evidence Rule 702 allows for the admission of expert opinions. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993) (holding that when faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable). *Daubert* applies to all expert testimony, not only scientific expert

3

testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In light of Daubert and Kumho Tire, this Court must screen proffered expert testimony for relevance and reliability. See Bland v. Verizon Wireless, (VAW) L.L.C., 538 F.3d 893, 896 (8th Cir. 2008). A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. See Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1208 (8th Cir. 2000). In assessing reliability, the Court should consider factors including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. Bland, 538 F.3d at 896. This list of factors is not exclusive, and this Court is allowed "great flexibility" in its analysis. Jaurequi v. Carter Mfg. Co.,173 F.3d 1076, 1082 (8th Cir. 1999).

Doubts regarding expert testimony should generally be resolved in favor of admissibility. United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011). The expert's information or opinion must also "assist" the trier of fact in understanding or determining a fact in issue. Fed. R. Evid. 702(a). "This condition goes primarily to relevance." Daubert, 509 U.S. at 591.

"[R]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." United States v. Brodie, 858 F.2d 492, 497 (9th Cir. 1988). See also Burkhart v. Washington Metro. Area Trans. Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards"); Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99–100 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony [as to principles of law], and

4

we now join them as to the general rule."); *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

Under Federal Rule of Evidence 404, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

III. DISCUSSION

    A.    *Daubert* motion (Filing No. 148)

The Court finds that that Dr. Shakeshaft is qualified to testify as an expert on industry standards for Title IX training, compliance, investigations, and responses, as well as about the history and purposes of Title IX. Her testimony and opinions are based on her education and experience. Her opinion will help the trier of fact to determine whether the College's responses and investigation comported with industry standards. The Court will not allow Dr. Shakeshaft to testify to issues of law or to express opinions that invade the province of the Court or the jury.

    B.    Ige's subsequent misconduct (Filing No. 150)

The Court finds that evidence that relates to alleged misconduct committed by Anthony Ige after the plaintiff graduated from Chadron State College and left the campus is not admissible to show Ige's character or propensity to commit a crime. Depending on the evidence, it may be admissible for the limited purpose of rebutting testimony that the

5

sanctions imposed on Ige were sufficient to protect campus safety.[1] The testimony may be subject to a limiting instruction, if offered, but the Court is not able to determine the parameters of any such instruction at this time. Counsel is instructed to confer with the Court in advance of presenting any evidence or argument on Ige's subsequent acts. It may be necessary to first submit the evidence to the Court outside the presence of the jury. The Court finds the defendant's motion should be granted at this time, but the Court will reconsider its ruling depending on the evidence at trial.

    C.    Stipulation (Filing No. 152)

The College moves for an order allowing introduction of the parties' January 2019 Stipulation as evidence at trial and prohibiting Doe's counsel from making any statements that provide context or an explanation for the communications set forth in the Stipulation. The defendant's motion involves a stipulation that the parties agreed to after Doe's counsel unsuccessfully moved to quash the defendant's notice to depose her. *See* Filing No. 100, Order denying Motion to Quash; Filing No. 115-12, Stipulation, Exs. A-E. It seeks an order that "[d]eems the Stipulation admissible and permits [the College] to argue at trial that the content of Doe's counsel's pre-suit communications with [the College]—including specifically Doe's counsel's failure in those communications to request from [the College] any Title IX accommodations for Doe in the 30 days prior to Doe's graduation—is relevant to Doe's claims and the NSCS's defenses." Filing No. 153, Brief at 2. Though the defendant argues that the Court has already determined that the relevance of "what Doe's counsel did or did not say in pre-suit communications" to the claims and defenses

---

[1] That evidence involves testimony that one of the sanctions imposed on Ige was an immediate suspension, investigation, and potential expulsion in the event of a similar incident. *See* Filing No. 167-6, Ex. 6, Deposition of Jon Hansen at 161-62.

in the case, the Court finds that is not necessarily the case. Filing No. 153, Defendant's Brief at 2. The finding made by the magistrate judge in the context of ruling on a discovery dispute is not dispositive of the Stipulation's admissibility as substantive evidence at trial.

The party offering the evidence at trial must establish it is relevant and probative. The Stipulation at issue serves to authenticate written communications (letters and emails) between plaintiff's counsel and the College. Filing No. 115-12, Ex. A to Ex. E. Those underlying exhibits are the best evidence of the communications. The exhibits can be authenticated by the witnesses who received or responded to them. The underlying documents—as well as any testimony that provides context or explanation—are subject to any objections that can be interposed at trial. To the extent that the evidence is admissible and relevant, a limiting instruction may be in order. The Court cannot decide the admissibility of the evidence, or the parameters of any limiting instruction in the context of a pretrial motion.

The defendant's concern that "Doe's counsel will utilize voir dire and opening and closing statements to editorialize about this subject matter, effectively serving as a fact witness whom the NSCS will be unable to cross-examine" is premature. *See* Filing No. 170, Defendant's Reply Brief at 2. Plaintiff's counsel states that any "context" will be provided by witnesses at trial. Filing No. 166, Plaintiff's Opposition Brief at 25-26. The Court finds these concerns can be addressed through objections at trial, if necessary. The motion will be denied without prejudice to reassertion at trial if the issue should arise.

1. Student Athlete (Filing No. 154)

Defendant seeks to preclude evidence that Ige was, or held himself out to be, a student athlete. The Court questions both the relevance and prejudicial effect of such

evidence, but the defendant is apparently concerned that Doe "wants to directly or indirectly suggest and/or argue to the jury (wholly without factual support) that the college considered Ige's standing as a student athlete when it responded to Doe's Title IX complaints" and to "leverage unfavorable stereotypes about college student athletes and/or appeal to attitudes that college student athletes receive preferential treatment." Filing No. 171, Defendant's Reply Brief at 1.

The jury will be instructed that attorney argument is not evidence. Also, the jury can draw reasonable inferences from the evidence. The evidence that relates to Ige's status as an athlete is what it is. It may be admissible as part of the background story or may relate to a witness's credibility. At this stage of the proceedings, the Court cannot evaluate the relevance, if any, of the evidence or whether the relevance is outweighed by prejudice. The defendant's motion is more in the nature of an objection to be raised at trial. At this point, the defendant has not shown that the evidence should be categorically excluded. Any such evidence will be admitted only on a proper showing of relevance and foundation. The Court finds the motion should be denied without prejudice to reassertion.

2. Doe's Prior History of Sexual Abuse (Filing No. 156)

The defendant moves to preclude evidence of or argument about the sexual trauma Doe experienced while growing up in Africa. The College argues the evidence is not necessary to provide context for Doe's reaction to the assaults (i.e., failure to scream, resist, or fight), and is unfairly prejudicial. It characterizes the evidence as designed to garner the jury's sympathy and contends it presents an "enormous danger" of unfair prejudice. Filing No. 173, Defendant's Reply Brief at 2 (emphasis in original). Doe responds that the evidence is necessary rebut any criticism of her reaction to the assaults

8

and to counter any denial by the College of the fact of the assaults. Filing No. 166, Plaintiff's Opposition Brief at 32. The College states that it does not intend at trial to characterize Doe's reaction as inadequate or to dispute the fact that an assault occurred. Filing No. 173, Defendant's Reply Brief at 2.

The Court agrees, however, with the plaintiff that the defendant must take a plaintiff as it finds her and that the story is the plaintiff's to tell. Whether or not the defendant argues drawing some inference from Doe's reaction or challenges the fact of the assaults, Doe's history may be relevant as background information and to damages or to the adequacy of the College's responses under the circumstances. The Court is not able to evaluate the relevance of such evidence vis-a-vis prejudice in the context of a pretrial motion. Accordingly, the motion will be denied without prejudice to reassertion at trial.

3. Feared Encounters (Filing No. 158)

The defendant seeks exclusion of testimony or argument about discrimination or harassment that did not occur. Filing No. 159, Defendant's Brief at 91. The College contends Doe cannot prove liability by pointing to instances of subsequent harassment she "imagines *could have* happened, but *never did*." *Id.* at 2 (emphasis in original). This is similar to the argument the defendant presented in its motion for judgment on the pleadings or reconsideration, to wit, "that a concrete instance of harassment must occur following the student's initial report of assault." Filing No. 174, Defendant's Reply Brief at 2. This Court has rejected that argument, finding that more than emotional distress in linked to the College's actions or inactions in this case. Filing No. 146, Memorandum and Order at 4. For the same reasons as stated in that order, the Court finds the defendant's motion to exclude evidence of "feared incidents" should be denied. The plaintiff will be

9

allowed to adduce evidence that the College's response to her reports made her vulnerable to Title IX injuries. Also, the evidence may be relevant to the issue of damages. The Court finds the defendant's motion should be denied.

    D.    Plaintiff's Motion for Additional Time for Voir Dire (Filing No. 175)

The plaintiff states that fifteen minutes is inadequate for voir dire and she requests an hour per party to conduct attorney voir dire. Filing No. 176, Plaintiff's Brief at 4. She also seeks to limit or eliminate juror rehabilitation by the Court. *Id.* at 4-6. The defendant responds that it understands the Court allows thirty minutes for attorney voir dire and has no objection to that amount of time. Filing No. 179, Defendant's Opposition at 2 n.2. The College objects, however, to an hour of attorney voir dire, and to any limit on rehabilitation of jurors. *Id.* at 2-3. It proposes a written juror questionnaire to obviate the need for extended voir dire. *Id.* at 1-2.

The Court finds the plaintiff's motion should be denied at this time. The Court's practice varies from case to case and is dependent to some extent on juror responses. Generally, the Court will conduct voir dire and will allow follow-up by attorneys. The Court will generally allow at least a half hour of voir dire by the attorneys in cases of this nature and will extend that time if the situation warrants it. With respect to questions of a sensitive nature, the Court sometimes allows jurors to respond at a sidebar or in chambers.

The Court will consider asking any proposed questions submitted to the Court up to 5 days before the commencement of trial and the Court will furnish the parties with an outline of the questions the court intends to ask shortly before the trial. Proposed written questionnaires for the Court to consider should be submitted to the Court at least six

weeks prior to the trial to allow time for jurors to respond. Accordingly, the Court finds the plaintiff's motion for an extension of time to conduct voir dire should be denied at this time. The plaintiff's motion to restrict or limit rehabilitation of potential jurors will also be denied because it would unduly limit the discretion of the Court.

IT IS ORDERED that

1. The defendant's *Daubert* motion in limine (Filing No. 148) is denied.

2. The defendants' motions in limine (Filing Nos. 150, 152, 154, 156, and 158) are granted in part and denied in part as set forth in this order.

3. The plaintiff's motion for extended time for voir dire and to limit rehabilitation (Filing No. 175) is denied.

Dated this 25th day of May 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge