IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | **8:17CV265** |
| vs. | |
| BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, a Political Subdivision of the State of Nebraska; | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on the defendant's motion for judgment on the pleadings, or alternatively, for reconsideration, Filing No. 177. This is an action for gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). The matter has been fully briefed. *See* Filing Nos. 178, 180, 181.

I.      BACKGROUND

The plaintiff alleges that, as an international student at Chadron State College from 2013 to 2016, she was sexually assaulted while working on campus in the work-study program. The plaintiff alleges hostile environment and gender discrimination by defendant Board of Trustees of Chadron State College (hereinafter "Chadron State" or "the College") in connection with the college's response to reports of two alleged on-campus rapes by a fellow student, Anthony Ige. The defendant earlier moved for summary judgment, asserting that undisputed evidence showed, as a matter of law, that it was not deliberately indifferent to the plaintiff's Title IX rights. On February 7, 2020, this Court denied the motion, finding there were genuine issues of material fact on the adequacy of the defendant's response to the plaintiff's complaints of rape, which the

1

college credited as true.  Filing No. 135, Memorandum and Order at 9.  Specifically, the Court found evidence showed that the plaintiff reported a May 2016 "nonconsensual sexual encounter with fellow student Anthony Ige to Robin Bila, a licensed mental health practitioner who provided services to students at the College, in the summer of 2016."[1] *Id.* at 2.  The counselor stated she was concerned about Doe's safety, but did not report the incident to the police or to anyone else.  Filing No. 124, Index of Evid., Ex. 6, Deposition of Robin Bila ("Bila Dep.") at 6-7, 13-14.   After another incident in September 2016, the plaintiff "reported to her counselor, and later to Chadron Community Hospital personnel and to the police, that Ige again sexually assaulted her, first in the stairwell of Andrews Hall, and then in the basement bathroom of the building."  Filing No. 135, Memorandum and Order at 2.  The Chadron Police Department then informed the College's Title IX Coordinator of the alleged sexual assault.  *Id.*  After an investigation, the College responded as follows:

> the college imposed "no contact" orders on both Ige and Doe, enrolled Doe in an online course (allegedly without her consent) so as to avoid encountering Ige, changed Doe's work assignment rather than impose restrictions on Ige, and directed Ige to obtain counseling at the same facility as Doe.  Ige was placed on "behavioral probation," a status that is not defined in the College's policies and does not involve any reporting or supervision.  Ige was allowed to freely move about on campus to any location other than the plaintiff's workplace.  There is also evidence that the sanctions on the assailant were determined without any assessment of the risk of future attacks by Ige, notwithstanding the fact that the College regarded him as having an insufficient understanding of the concept of consent.

*Id.* at 4.  The plaintiff also submitted expert testimony that the College's response was inadequate.  *Id.*  Between the first assault in May 2016 and the assault in September

---

[1] Bila first provided mental health services to Chadron State students under a contract with the College but became an employee of the College in August 2016.  Filing No. 124, Index of Evid., Ex. 6, Deposition of Robin Bila at 6-7.

2016, Doe had several additional encounters with her assailant on campus, and at times he taunted her about the May incident. Filing No. 124, Index of Evid., Ex. 9, Deposition of Jane Doe at 128-34. On learning of the disciplinary sanctions imposed on Ige after the September incident, Doe notified the College that she believed they were inadequate and that she did not feel safe on campus. Filing No. 135, Memorandum and Order at 4.

In reliance on *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1106 (10th Cir. 2019), the Court noted that the injury in a Title IX action is the deprivation of an equal educational opportunity. *Id.* at 8. Based on voluminous evidence presented on summary judgment, the Court found that a jury could reasonably find that the College's response to the reported harassment was clearly unreasonable. Filing No. 135, Memorandum and Order at 10. The Court stated that the College had actual notice of two troubling incidents and was aware of the plaintiff's reports of brutal, violent, nonconsensual sexual assaults. *Id.* at 9. The information was relayed to the highest levels of the College's administration. *Id.* at 9. Further, after the imposition of disciplinary sanctions, Doe reported that she continued to feel unsafe on campus. *Id.* at 4.

The defendant now seeks judgment on the pleadings or reconsideration of the Court's summary judgment order. It contends that a recent Eighth circuit case, *Shank v. Carleton College*, 993 F.3d 567, 576 (8th Cir. 2021), constitutes a change in law that is dispositive of the plaintiff's Title IX claims. The College argues that the case stands for the proposition that "a Title IX plaintiff must suffer a subsequent instance of sexual harassment as a result of a college's deliberate indifference, and that emotional trauma alone, even if proven, 'is not enough' to maintain a Title IX cause of action." Filing No. 178, Defendant's Brief at 1 (quoting *Shank*, 993 F.3d at 576). Further, the College

3

contends that judgment on the pleadings is warranted, because controlling Eighth Circuit precedent prohibits Title IX plaintiffs from maintaining suit based on emotional trauma alone. *Id.* at 10. Also, it argues that the *Shank* decision is directly contrary to *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1106 (10th Cir. 2019), on which this Court relied, and contends that the plaintiff's claim fails under *Shank*.

The plaintiff opposes the motion, arguing that *Shank* is not applicable to the facts herein. Alternatively, she seeks leave to amend her complaint to remedy any deficiencies.

II.   LAW

In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted). This is a strict standard—"judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). Ultimately, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Clemmons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

"'A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court and should be overruled only if there is an abuse of discretion.'" *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). "A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.*

A "motion to reconsider" is not authorized by the Federal Rules of Civil Procedure. *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988). Such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment, or as a Rule 60(b) motion for relief from judgment." *Auto Servs. Co., Inc., v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008). Courts have generally viewed any motion which seeks a substantive change in a judgment as a Rule 59(e) motion if it is made within twenty-eight days of the entry of the judgment, as required by the Rule. *See Omaha Indian Tribe v. Tract I--Blackbird Bend Area*, 933 F.2d 1462, 1467 n.3 (8th Cir. 1991) (applying former ten-day time limit). When a motion is not timely filed under Rule 59(e), it is treated as a Rule 60(b) motion. *See Baxter Int'l. Inc. v. Morris*, 11 F.3d 90, 92 n.2 (8th Cir. 1993). A motion under Rule 60(b) must be made within a reasonable time, but no more than one year after the order or proceeding if for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud. Fed. R. Civ. P. 60(b). Motions brought under Federal Rule of Civil Procedure 59(e) and 60(b) are to be analyzed identically. *Metro. St. Louis Sewer Dist.*, 440 F.3d at 933 n.3.

Motions for reconsideration serve the limited function of correcting "'manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend [a] judgment." *Id.*

Also, reconsideration may be justified on the basis of an intervening change in the controlling law. *Knopik v. Amoco Co.*, No. Civ. 97-1134 MJD/JGL, 2003 WL 172917, at *1 (D. Minn. 2003); *see also* 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.). "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610 (8th Cir. 1999) (quoting *Morris v. American Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993). "The doctrine does not apply, however, 'when an intervening decision from a superior tribunal clearly demonstrates the law of the case is wrong.'" *Id.* (quoting *Morris*, 988 F.2d at 52). "The doctrine of the 'law of the case' is a discretionary tool permitting a district court to effectively manage the legal issues arising during litigation. *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997) (noting that the doctrine does not deprive the district court of the ability to reconsider earlier rulings and if the district court believes that an earlier decision was reached in error, it may revisit the decision to avoid later reversal).

As relevant to the present motion, "[a] student who sues an educational institution under Title IX may hold it liable but 'only for its own misconduct.'" *Shank,* 993 F.3d at 573 (quoting *Davis,* 526 U.S. at 640). "A plaintiff seeking to prove a Title IX violation in the

6

wake of a peer sexual assault must establish that the institution was: (1) 'deliberately indifferent, (2) 'to known acts of discrimination,' (3) 'which occurred under its control.' *Id.* (quoting *Pearson v. Logan Univ.*, 937 F.3d 1119, 1125 (8th Cir. 2019)). An institution is deliberately indifferent when its response or lack of response to harassment "'is clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648). "Critically, the institution's deliberate indifference must 'cause students to undergo harassment' or 'make them vulnerable to it.'" *Id.* (quoting *Davis*, 526 U.S. at 645). "This requires a Title IX plaintiff to demonstrate a 'causal nexus' between the college's conduct and the student's experience of sexual harassment or assault." *Id.* (quoting *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1058 (8th Cir. 2019)).

III.    DISCUSSION

The Court has reviewed the *Shank* case and finds it does not support the weight the defendant places on it. First, the *Shank* case does not effect a change in controlling law, so as to provide a ground for reconsideration. The *Shank* decision relies on and cites the standards announced in *Davis*, 526 U.S. at 648, and *Culver-Stockton,* 865 F.3d at 1058-59, both of which were considered by this Court and cited in its summary judgment opinion. Filing No. 135, Memorandum and Order at 6-8.

The *Davis* case remains the controlling authority on causation for peer-on-peer harassment under Title IX. *See Shank*, 993 F.3d at 573. A plaintiff must demonstrate a causal nexus between an institution's conduct and the student's experience of gender discrimination. *Davis*, 526 U.S. 644-45. Contrary to the defendant's contention, *Shank* does not address a circuit split on the question of whether subsequent harassment is needed to state a Title IX claim. *See Shank*, 993 F.3d at 573-76. Nor does the Eighth

Circuit explicitly side with the Fifth, Sixth, and Eleventh Circuits in holding that Title IX requires subsequent harassment. *Id.* *Shank* cites none of the cases the defendant refers to in connection with the Circuit split.[2]  *Id.*  *Shank* does not adopt or state any new proposition of law, it merely restates the position the Eighth Circuit adopted in *Culver-Stockton* on the necessity of a causal nexus between the college's conduct and he student's experience of sexual harassment or assault.  *Id.* at 573.  The defendant has not provided the Court with any reason to depart from the law of the case and reverse its earlier ruling.

Also, the Court finds the holding in *Shank* does not affect the Court's decision.  In *Shank*, the Eighth Circuit found only that Carleton College's conduct in response to a sexual assault complaint (limiting her participation in the adjudicatory process, permitting her to meet with her assailant, failing to remove posters featuring the assailant, and failing to promptly find her new accommodations on campus) did not amount to deliberate indifference.  *Id.* at 574-76.  The Appeals Court applied *Culver-Stockton* and *Davis* to the facts presented in *Shank* and found the plaintiff therein had not demonstrated a causal nexus between the college's conduct and her experience of sexual harassment, noting that "linking the colleges actions or inactions to emotional trauma the plaintiff experienced in the wake of sexual harassment or assault, even if proven, is not enough."  *Id.* at 576. That statement is directed to the situation presented in *Shank*—once a College's

---

[2] Those are *I. L. Houston Independent School District*, 776 Fed. Appx. 839 (5th Cir. 2019) (unpublished); *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 621 (6th Cir. 2019) (noting "requirement that at least one more (*further*) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim") (emphasis in original); *Hill v. Cundiff*, 797 F.3d 948, 972 (11th Cir. 2015) ("A single instance of sufficiently severe one-on-one peer harassment cannot have such a systemic effect in light of the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.").

response to a harassing incident has been determined to have been "not clearly unreasonable," the fact that emotional trauma remains a consequence of the incident is not enough to recover under Title IX.

The present case does not involve facts that are similar to *Shank*. In the present case, the College's actions are not causally linked only to emotional trauma but to a second assault and to the resulting deprivation of educational benefits or opportunities. The College's response—doing nothing in response to the May 2016 report and failing to suspend or expel the assailant, allowing him to roam freely on campus except for Doe's workplace, requiring him to obtain counseling at a same place as Doe, while requiring Doe to take online classes and to change her place of employment in response to September 2016 report—could be seen as inadequate to address the known discriminatory effects of peer sexual assault that occurred on the College's premises involving a person under its control. The College's actions could appear to a reasonable juror to be knowingly indifferent to a student's vulnerability to harassment as well as designed to lessen the quality of victim's education. There is evidence from which a jury could easily conclude that Chadron State's response to Doe's reports of complaints of two rapes, which the College credited as true and the assailant admitted, amounted to deliberate indifference because it was "clearly unreasonable in light of the known circumstances." *See Davis*, 526 U.S. at 649. One known and acknowledged circumstance was the danger of a repeated assault. After the first report, the College's counselor had concerns about Doe's safety, but did nothing.[3] The College knew Doe

---

[3] The counselor explained that Doe did not want file a police report with respect to the first rape. Filing No. 124, Ex. 6, Bila Dep. at 35, 62. That is not to suggest that the counselor should not have reported the violent incident at all. A jury could find that some action could have been taken to protect the victim. There

continued to feel unsafe after sanctions were imposed on Ige in response to the second assault. Evidence indicates that more than emotional trauma was linked to Chadron State's response.

The *Shank* decision does not call into question the proposition that the injury in a Title IX case is deprivation of educational opportunities. *See Farmer,* 918 F.3d at 1106. Once the plaintiff shows that the funding recipient was deliberately indifferent to her complaints of peer sexual harassment, the plaintiff can show the requisite harm caused by that deliberate indifference by alleging and proving that the college's inaction deprived her of the benefits of the education program. *See id.*; *Davis*, 526 U.S. at 650 (identifying injury as harassment that is "can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"); Filing No. 135, Memorandum and Order at 8. Doe presented evidence in summary judgment proceedings that she repeatedly encountered her abusive assailant on campus between May and September 2016 and was required to take her classes online as a result of the second sexual assault complaint, consequences that a jury could find deprived Doe of the educational opportunities and benefits to which she was entitled.

The defendant's argument that *Shank's* holding requires that "a Title IX plaintiff must suffer a post-report instance of sexual harassment traceable to the college's conduct" misses the mark. The thrust of that argument is that since Doe did not suffer a third sexual assault after her report of the incidents, she has no claim. The defendant's interpretation misconstrues the nature of the injury that triggers Title IX liability and

---

is no dispute that, contrary to the situation presented in *Shank,* the counselor had been told the identity of the assailant at the time of the first attack. *Id.* at 68.

conflates the assailant's assaultive conduct with the conduct of the college in responding to the assault.

Under *Davis*, conduct by a fellow student must be sufficiently severe, pervasive and objectively offensive that it could be said to deprive the victim of opportunities and benefits of education.[4]   Conduct that amounts to actionable discrimination under Title IX is action or nonaction by an educational institution in inadequately responding to, or failing to respond to known instances of assaultive conduct by persons under its control.   The causal nexus necessary to impose a damages remedy under Title IX is a connection between the institution's response to such conduct and the resulting injury to a plaintiff's ability to obtain the benefits of her education.   In other words, the conduct of the assailant or rapist comes into play to determine the pervasiveness, severity, and offensiveness of peer behavior, so as to warrant a response by the institution, but it is the college's response to the behavior that allows imposition of a damages remedy.   To avoid liability, the college must respond in a manner that is "not clearly unreasonable" under the circumstances of the case and in the context of various factors.   *See Davis*, 526 U.S. at 649-51.

Further, in arguing that *Shank* allows Chadron State to avoid liability, the defendant fails to recognize the distinction between the broader notion of harassment and the narrow example of assault.   The defendant's position seems to require equating "sexual harassment" with only rape or assault, and not with less serious forms of harassment

---

[4] In *Davis*, the Supreme Court states that "[u]psetting" conduct such as teasing and name-calling are not the sort of "severe, pervasive, and objectively offensive behavior that denies its victims the equal access to education that Title IX is designed to protect." *Davis*, 526 U.S. at 652.   Ignoring physical threats "successfully preventing the female students from using a particular school resource—an athletic field or a computer lab, for instance, however, are examples of conduct that administrators cannot ignore, if aware of such behavior." *Id.* at 651.   Brutal and violent rapes would presumably fall in the latter category.

such as explicit or implied threats or intimidation.  There is evidence herein that suggests the College actually knew of Doe's heightened risk of, or heightened vulnerability to, sexual harassment and failed to take appropriate actions under the circumstances. Evidence shows that after the report to her counselor, Doe suffered harassment by Ige on campus.  From that evidence, a jury could conclude that the College's failure to properly respond deprived the plaintiff of the benefits and opportunities of her education.

A jury could reasonably conclude that the discipline imposed on Doe's assailant, in terms of a constraint on his freedom to move about campus, was not sufficient to protect Doe from further threats or intimidation.  There is thus evidence that supports a finding of subsequent harassment, short of an additional actual assault or rape.  The limitation on Doe's ability to move about freely on campus without encountering Ige, imposed only after the report conveyed by the police, and the requirement that Doe take classes online, could be found to deprive her of educational opportunities.  Any argument that Chardon State is entitled to judgment as a matter of law for lack of actual notice is unavailing.  The college knew that Doe had been raped on two occasions by Ige.  It credited her testimony to that effect and knew that Ige did not comprehend the concept of consent.  It knew she did not feel safe on campus after the investigation.  The Court finds that whether the college's response to that risk or vulnerability was adequate is a question of fact for the jury.

Contrary to the defendant's assertions, the *Shank* opinion is limited to its facts and does not affect the Court's summary judgment decision.  The defendant has not shown that the Court's summary judgment ruling is clearly wrong and has not presented any

reason to disturb the law of the case in this action.  Accordingly, the Court stands by its earlier ruling and finds the defendant's motion for reconsideration should be denied.

Further, the Court finds the defendant's motion for judgment on the pleadings should be denied for the same reasons.  Also, this action has been pending for over three years.  Substantial discovery has been completed.  This action is far beyond the point at which a judgment could be imposed on the pleadings alone.  The pretrial order will supersede the pleadings in any event and the matter is to be tried in a few months. Accordingly,

IT IS ORDERED that the defendant's motion for judgment on the pleadings or reconsideration  (Filing No. 177) is denied.

Dated this 10th day of June 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge